Aaron K. MOORE, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, Respondent.

Jeffboat, Inc., Intervening–Respondent.

No. 87–1190.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1987.

Decided Dec. 29, 1987.

Timothy L. Swabb, Jenner & Block, Chicago, Ill., for petitioner.

Robert A. Donald, III, Office of the Sol., Washington, D.C., for respondent.

Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

This is a petition for review of a final order of the Benefits Review Board (the "Board"), United States Department of Labor. The Board affirmed the decision of the Administrative Law Judge (the "ALJ") denying the petitioner's claim for benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. A question remains whether the petitioner's absence from work during the period January to July 1981 was due to his work-related injury. Accordingly we vacate the decision and remand to the Board with instructions to remand this case to the ALJ for further findings of fact.

I.

Aaron K. Moore was working for Jeffboat, Inc. as a welder on a barge when a heavy bar struck his foot on June 19, 1980. Moore lost a few days of work due to the injury. When he returned to work on June 25, 1980, he was placed on disciplinary layoff for smoking marijuana. Moore's foot injury continued to cause him considerable pain and eventually the source of his pain was diagnosed as a neuroma, requiring surgery. The scheduled surgery was not performed because Jeffboat refused to accept liability for the cost and Moore apparently could not afford to pay for the surgery himself. Jeffboat reinstated Moore in January 1981 but Moore did not actually work again until July 27, 1981. Moore's employment status from January to July 1981 has never been resolved. Moore claims that, in January, his supervisors gave him a "leave" because of his foot injury. Jeffboat claims that, after Moore was reinstated, he was "later" laid off "due to work cutback."

The ALJ found that the neuroma on Moore's foot was a work-related injury in that it was at least aggravated by the bar hitting his foot. Thus, Moore was entitled to have Jeffboat pay for the surgery and

any disability benefits arising during recuperation. The ALJ accepted one physician's testimony that Moore's functional disability varied from seventy-five percent in February 1981 to forty-five percent in September 1981. The ALJ noted that, at the time of the hearing, Moore was effectively on "light duty" at Jeffboat because of his foot injury. The ALJ ultimately concluded, however, that Moore "presented no evidence regarding any loss of earning capacity as a result of his foot during the period of disciplinary lay-off." Thus, the ALJ denied compensation benefits for the period from June 25, 1980, through the date of the hearing.

The ALJ denied Moore's request to reconsider his decision, finding Moore ineligible for compensation benefits because he "was working when he was put on disciplinary lay-off, and when he was permitted to return to work, he did so and has continued to do so albeit with difficulty, but with no loss of earnings."

The Board affirmed the ALJ's decisions. Although the Board determined that the ALJ mistakenly found Moore to have returned to work in January 1981, it concluded that this error was harmless because Moore had failed to establish an inability to work at any time after June 25, 1980.

## II.

On appeal, Moore argues that the Board's affirmance was improper once it found that the ALJ mistakenly assumed Moore returned to work when Jeffboat reinstated him in January 1981. According to Moore, the Board's decision entailed a *de novo* factual finding that Moore had failed to prove any inability to work as a result of his foot injury and, moreover, this finding is not supported by substantial evidence. Jeffboat responds that the Board merely affirmed the ALJ's conclusion that, based on the evidence, Moore was not entitled to any compensation from Jeffboat after he returned to work on June 25, 1980.

On review, this court "is limited to an evaluation of whether the ALJ's and the Board's decisions are rational, supported by substantial evidence and consistent with the applicable law." *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 691 (7th Cir.1987); *see also Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589 (7th Cir.1985). Likewise, in reviewing the ALJ's rulings, the Board must accept findings of fact "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3); *see also Prewitt*, 755 F.2d at 590; 20 C.F.R. § 802.301. The Board, however, "does not have the power of *de novo* review of fact-findings." *Prewitt*, 755 F.2d at 590; *see also* 20 C.F.R. § 802.301.

This circuit has defined substantial evidence as "enough to justify, if the trial were to a jury, a refusal to direct a verdict where the conclusion sought to be drawn from it is one of fact for the jury." *Garvey Grain Co. v. Director, Office of Workers' Compensation Programs*, 639 F.2d 366, 370 (7th Cir.1981). Other courts reviewing ALJ findings describe substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003, 1006 (5th Cir.1978), or as "more than a scintilla of evidence, but less than a preponderance," *Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862, 866 (1st Cir.1982).

In reviewing the record as a whole, we find that there was no substantial evidence to support the ALJ's conclusion that Moore returned to work when he was permitted to do so in January 1981. Both parties agree that Moore was reinstated following his disciplinary suspension in January 1981, but that he did not actually return to work until July 1981. The parties disagree over the reason for Moore's absence from work during that period and the effect of this absence on his claim for disability compensation. Thus, we agree with the Board's conclusion that the ALJ "mistakenly found [Moore] to have returned to work in January 1981." Because we disagree, however, that this error is "harmless," we vacate the Board's order affirming the ALJ's denial of benefits.

Given these circumstances, we must remand to the ALJ for a factual determina-

tion of Moore's employment status from January to July 1981. If, as Moore claims, his supervisors gave him a leave in January because of the condition of his foot, this would be strong—certainly substantial—evidence of Moore's inability to work as a result of the work-related injury. Thus, there would be substantial evidence of a compensable disability.

The Board reasoned that, because the ALJ had concluded that Moore failed "to establish any [in]ability to work after June 25, 1980, due to his June 19, 1980 injury," the mistaken belief that Moore returned to work as soon as he was reinstated was "harmless." The ALJ's mistake can be deemed harmless only if his ultimate ruling did not depend on his erroneous factual finding. An examination of the ALJ's order indicates that his conclusion, that Moore failed to show he was unable to perform the duties of his job, was based, at least in part, upon his belief that Moore returned to work as soon as Jeffboat permitted in January:

> Although [Moore] has shown that performance of his work is difficult and painful, he has failed to show that he cannot perform that work, and there has been no loss of earnings. [Moore] was working when he was put on disciplinary lay-off, and when he was permitted to return to work he did so and has continued to do so, albeit with difficulty, but with no loss of earnings. If the contemplated surgery is successful, then he will be able to perform his work without any difficulty. If the surgery is not successful, and he suffers a permanent impairment to his foot he can then reopen these proceedings on the basis of changed circumstances.

*Moore v. Jeffboat, Inc.,* OWCP No. 10–14178 (Mar. 1, 1982) ("Order Denying Motion for Reconsideration").

The ALJ's analysis indicates that he concluded that Moore's foot injury was not disabling for three reasons: (1) Moore worked for one day before the disciplinary layoff; (2) Moore was working at the time of the hearing; and (3) Moore had never missed work or lost earnings due to his foot injury.[1] The third, and we believe the strongest, reason for denying compensation is based on an erroneous finding of fact.

On remand, the ALJ should ascertain the reason that Moore did not work from January to July 1981. If Moore's absence was unrelated to his foot injury, we agree with the Board that the ALJ's conclusion, that Moore is not entitled to compensation payments, is supported by substantial evidence. On the other hand, if Moore can demonstrate that his supervisors excused him from work in January because of the condition of his foot, there would be substantial evidence to support an award of compensation for earnings lost from January to July 1981.

The final order of the Board accordingly is

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

1. The ALJ's reasoning in his original ruling is consistent with his reasoning in the second order:

> There is no indication that [Moore] was not fully performing his duties on June 25, 1980, immediately prior to his disciplinary lay-off. [Moore] presented no evidence regarding any loss of his earning capacity as a result of his foot during the period of his disciplinary lay-off. He is now being paid the full wage he would have been receiving if he had not been injured, and the evidence is that after recuper-

ation from a relatively mild surgical procedure he will have no residual physical disability. [Jeffboat] has compensated [Moore] for time lost due to his injury prior to June 25, 1980. I find that there is no basis in this record for awarding any compensation payments for the period from June 25, 1980 through the date of the hearing.

*Moore v. Jeffboat, Inc.,* OWCP No. 10–14178 (Dec. 11, 1981) ("Decision and Order—Awarding Benefits").