Laura FARMER, Widow of Eugene Farmer, Deceased, Petitioner,

v.

Lawrence W. ROGERS, Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondent.

No. 86–4114.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 22, 1987.

Decided Feb. 11, 1988.

David M. Taylor (argued), Smith & Carter, Harlan, Ky., for petitioner.

Bruce A. McDonald (argued), Office of the Sol., U.S. Dept. of Labor, J. Michael O'Neill, Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for respondent.

Before LIVELY, Chief Judge,
WELLFORD, Circuit Judge, and
BROWN, Senior Circuit Judge.

LIVELY, Chief Judge.

This case arises under the Black Lung Benefits Reform Act of 1977, Pub.L. 95–239, 30 U.S.C. §§ 901 et seq. (1976 Ed. Supp. II). Section 2 of the 1977 Act amended § 402(f)(1) of the original Black Lung Benefits Act to provide that the term "total disability shall have the meaning given it by regulations of the Secretary of Health and Human Services and the Secretary of Labor, with certain limitations. 30 U.S.C. § 902(f)(1) (1982). The question is whether the Secretary of Labor misapplied the regulations promulgated pursuant to this authority, 20 C.F.R. §§ 727.203 and 727.205, by placing a burden on the surviving widow of a deceased miner to establish that there were changed circumstances of employment indicating a reduced ability to work. The petitioner contends that such an application is inconsistent with the Act.

## I.

Eugene Farmer died in a coal mine accident on July 26, 1976, and his widow, Laura Farmer, filed a timely claim for survivor's benefits. The claimant established that her husband had worked in coal mines for approximately 23 years. She also produced X-rays that were interpreted as showing that Eugene Farmer had coal worker's pneumoconiosis at the time of his death. After her claim was denied initially and

upon reconsideration, Laura Farmer requested a hearing before an administrative law judge (ALJ).

At the hearing before the ALJ Mrs. Farmer produced evidence that her husband's breathing problems, which were of long standing, became much worse during the last months of his life. In June and July 1976 Eugene Farmer was evaluated by two specialists to determine the cause of his respiratory impairment. Dr. O'Neill of the medical faculty at the University of Kentucky concluded from Farmer's history and from reading an X-ray of good quality that the miner had pneumoconiosis. Dr. O'Neill testified by deposition that it was his advice on June 29, 1976, that Eugene Farmer should no longer expose himself to high concentrations of coal dust, and he expressed the opinion that Farmer should leave coal mine work. Dr. Anderson of the University of Louisville medical faculty concurred in the diagnosis of coal worker's pneumoconiosis.

Mrs. Farmer testified that her husband had been so weak and short of breath at the time of his visit to Dr. O'Neill that he was unable to do anything requiring exertion. After being told that he had pneumoconiosis, Farmer decided to quit work at the mine, and he informed his employer of his decision. He also hired an attorney to prepare a worker's compensation claim. At this time Farmer was working at a small mine, with no more than ten employees, and he agreed to continue working until the owner could find a qualified replacement. Farmer and the owner were the only employees of the mine qualified to operate the cutting machine, and the owner would need to search for someone to take Farmer's place. The mine was closed for vacation when Farmer made his decision to quit, and he agreed to continue to work temporarily when it reopened while the owner found his replacement.

Farmer worked one day after the mine reopened and then was off for a week because of a foot injury. He was killed in a mine accident on the day of his return the following week. Mrs. Farmer testified

that her husband was working at his usual job at the time of the accident, and that it was one of the dirtiest in the mine. She stated that he really did not have the strength to work "in the end" and had been completely exhausted when he came home from work. She also testified that after Dr. O'Neill's advice her husband had decided that he could quit because their children were grown and the two of them could "survive" on what he would draw.

Mrs. Farmer produced copies of her husband's earnings statements for the years of his coal mine employment. In 1974 Eugene Farmer earned $10,761 and in 1975, $10,560. During the seven months that he lived in 1976, Farmer earned $3,625. Thus, during 1974 and 1975 Farmer had earnings of approximately $880 per month while his earnings fell to $518 per month in 1976. Mrs. Farmer offered this evidence in support of the claim that her husband's condition became progressively worse and that he was not able to carry on his previous activities during the last months of his life.

The respondent, the Director of the Labor Department's Office of Workers' Compensation Program (OWCP), offered no evidence at the hearing.

## II.

The ALJ found that the X-ray evidence raised a presumption under 20 C.F.R. § 727.203(a)(1) (the "interim presumption") that Eugene Farmer was totally disabled at the time of his death due to pneumoconiosis arising from his coal mine employment. However, the ALJ went on to find that this presumption was rebutted under 20 C.F.R. § 727.203(b)(1) by reason of the undisputed fact that Farmer was working at his usual occupation when he was killed, and "[t]here were no changed circumstances of employment indicative of a reduced ability to perform coal mine work." The ALJ reached his conclusion by applying language in 20 C.F.R. § 727.205(b) to this claim.

Laura Farmer petitioned the Benefits Review Board (BRB) for review of the ALJ's decision. The BRB agreed that the claimant was entitled to the interim presumption of total disability at the time of death, and that the presumption was rebutted. The BRB stated: "We also affirm the administrative law judge's finding that the evidence failed to establish the existence of changed circumstances resulting in the miner's reduced ability to perform his usual coal mine work under 20 C.F.R. § 727.205."

In seeking review and reversal of the BRB decision Laura Farmer argues that 20 C.F.R. § 727.205(b), as applied to a claim by a survivor of a deceased miner, is invalid because it contravenes congressional intent as expressed in the Act. Included in this argument is the contention that both the ALJ and the BRB placed the burden of producing evidence to rebut the interim presumption on the claimant rather than on the Director of OWCP. Mrs. Farmer's second argument is that even if § 727.205(b) is valid, the determination that there was no evidence of changed circumstances of employment is not supported by substantial evidence.

## III.

### A.

Section 402(f)(1) of the original Black Lung Benefits Act, 30 U.S.C. § 902(f)(1) (1970), contained a definition of "total disability" that was frequently construed by the Social Security Administration and some courts to preclude a finding that a miner was totally disabled if he was working as a miner or in comparable employment at the time he made a claim for benefits. The same construction was applied where a deceased miner was working at the time of his death. The Black Lung Benefits Reform Act of 1977 sought to correct this practice by requiring that regulations defining total disability specifically address the circumstance of a miner who continued to work while claiming disability due to pneumoconiosis. Thus, as amended, § 402(f)(1), in pertinent part, provides:

(f)(1) The term "total disability" has the meaning given it by regulations of the Secretary of Health and Human Services for claims under part B of this subchapter, and by regulations of the

Secretary of Labor for claims under part C of this subchapter, subject to the relevant provisions of subsections (b) and (d) of section 923 of this title, *except that*—

(A) in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time;

(B) Such regulations shall provide that (i) a deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled; and (ii) in the case of a living miner, if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work, such miner's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled;

30 U.S.C. § 902(f)(1) (emphasis supplied).

After the adoption of the 1977 Reform Act it was clear that the interim presumption could not be rebutted by showing only that the miner continued to work in a coal mine at the time of his death. *Consolidation Coal Co. v. Smith*, 699 F.2d 446, 449 (8th Cir.1983).

Pursuant to the statutory direction the Secretary of Labor promulgated a regulation codified as 20 C.F.R. § 727.203. As applicable to this case, § 727.203 provides:

§ 727.203 Interim presumption.

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);

\* \* \* \* \* \*

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title);

\* \* \* \* \* \*

However, the Secretary then dealt more specifically with the "current coal mine employment" problem in § 727.205:

§ 727.205 Effect of current coal mine employment or coal mine employment at the time of death.

In the case of a miner who is working in coal mine employment or was employed in coal mine employment at the time of death, the following shall apply:

(a) A deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled. In the case of a deceased miner who was employed in a coal mine at the time of death, all relevant evidence, including the circumstances of such employment and the statements of the miner's spouse, shall be considered in determining whether the miner was totally disabled due to pneumoconiosis at the time of death. In the case of a living miner, if there are changed circumstances of employment indicative of reduced ability to perform his or her coal mine work, the miner's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled.

(b) Notwithstanding any other provision of this section, and except as provided in section 411(c)(3) of the act, no miner shall be found to be totally disabled if the miner is found to be doing his or her customary coal mine work or "comparable and gainful work" (see

§ 410.412(a)(1) of this title) and there are no changed circumstances of employment indicative of reduced ability to perform coal mine work.

## B.

The ALJ recognized that the fact of Farmer's employment in a mine at the time of his death could not be used as conclusive evidence that he was not disabled. However, applying § 727.205(b) to this claim, he found this fact to be determinative because there was no evidence of changed circumstances of employment indicative of a reduced ability to perform his usual work in the mine. In responding before this court to Mrs. Farmer's argument that the ALJ had put the burden of rebutting the interim presumption on her rather than on the Director, counsel for the Director stated that Mrs. Farmer's own testimony established that there were no changed circumstances, and that this was sufficient to rebut the presumption.

█ Even if we were to conclude that the ALJ and the BRB properly applied § 727.205(b) in this case to require a showing of changed circumstances, we would be constrained to reverse the decision because there is not substantial evidence to support it. The uncontradicted evidence of the claimant established that Eugene Farmer was impaired during the last months of his life by chest pains and breathing problems, and that two medical specialists had diagnosed coal workers' pneumoconiosis as the cause of his impairment. Further, Mrs. Farmer testified that her husband was not able to do his job, had decided to quit the mines and had informed his employer of his decision. Again, this testimony was uncontradicted. Mrs. Farmer testified further that her husband returned to work after receiving Dr. O'Neill's diagnosis only because his employer needed time to find a replacement. If any of this testimony was not true the defendant could have produced the employer or Farmer's co-workers to contradict it. Finally, the claimant produced records that showed a reduction in earnings of approximately 40% in the last seven months of Eugene Farmer's life. The de-fendant offered no evidence of a reason for this reduction other than the widow's contention that Farmer was unable, by reason of pneumoconiosis, to work as he had in previous years.

Mrs. Farmer explained that her husband continued to work at one of the dirtiest jobs in the mine because as a conscientious employee he did not want the mine to close and other miners to lose their jobs because of his decision to quit. Yet, the only evidence the defendant appears to rely on to support the finding that the interim presumption was rebutted is the fact that Farmer continued to work on the cutting machine. The finding that the evidence failed to establish changed circumstances of employment is not supported by substantial evidence on the record as a whole. However, we reverse the decision of the BRB for a more fundamental error.

## IV.

█ The ALJ and the BRB erred by requiring evidence that there was a change in the circumstances of Eugene Farmer's employment. If § 727.205(b) is interpreted to apply to a claim by the survivor of a deceased miner, this section would be invalid as contravening § 402(f)(1)(B) of the Act, 30 U.S.C. § 902(f)(1)(B) (1982). That section of the Act has two parts, one addressing claims by survivors of deceased miners and the other addressing claims by living miners. There is no reference in § 402(f)(1)(B)(i), dealing with deceased miners, to changed circumstances of employment. That requirement is found only in § 402(f)(1)(B)(ii), which relates to living miners. Thus Congress said without qualification that a deceased miner's employment in a mine at the time of death shall not be conclusive evidence that the miner was not totally disabled. On the other hand, in the case of a living miner, such employment at the time of claimed disability is conclusive *unless* there are changed circumstances of employment.

█ It was rational for Congress to require this element of proof from a living miner while not imposing the same burden on, the survivor of a deceased miner. Pre-

sumably, evidence of a change in circumstances of employment would be more available to a living miner. Mrs. Farmer's difficulties in describing her husband's actual duties in the mine indicate the hardship that would be imposed upon a survivor to show the existence of changed circumstances.

Although Congress included the changed circumstances requirement only in claims by living miners, both the ALJ and the BRB interpreted § 727.205(b) as imposing it upon survivors of deceased miners. This was a clear error of law.

The very structure and language of § 727.205 support the view that subpart (b) applies only to claims of living miners. The first sentence of § 727.205(a) merely tracks § 402(f)(1)(B)(i), and provides that a deceased miner's employment in a mine at the time of his death shall not be conclusive evidence that the miner *was not* totally disabled. The second sentence of § 727.205(a) provides that all evidence shall be considered in the case of a deceased miner who *was working* at the time of his death. Both refer to a past event—the time of the miner's death. The third sentence shifts to the case of a living miner and tracks § 402(f)(1)(B)(ii), with its provision that employment in a mine at the time of claimed disability shall not be conclusive evidence that the miner *is not* totally disabled, if there are changed circumstances. The present tense, not the past, is used here. There is no statutory counterpart to § 727.205(b). However, this subsection does not refer to deceased miners and it is also written in the present tense.

The only way 20 C.F.R. § 727.205(b) can be reconciled with 30 U.S.C. § 902(f)(1)(B) and 20 C.F.R. § 727.203(b) is to hold that its requirements may be applied only to claims by living miners, and not to those by survivors of deceased miners. There is no statutory authority for imposing upon the widow of a deceased miner the burden of proving changed circumstances of employment, since 30 U.S.C. § 902(f)(1)(B) clearly attaches that requirement only to claims of living miners. The very purpose of the 1977 amendment would be thwarted by the ALJ and BRB's interpretation of the regulations.

Once the misapplication of § 727.205(b) is discarded this becomes a simple case of a claimant's establishing entitlement to a presumption of total disability and the respondent's failing to rebut the presumption. Since the respondent has the burden of rebutting a presumption once triggered, and evidence of continued coal mine employment alone is legally insufficient to rebut the interim presumption, Mrs. Farmer was entitled to an award of benefits.

## V.

One other comment is in order. There has been an unconscionable delay in handling this widow's claim. Eugene Farmer died on July 26, 1976, and Laura Farmer filed her claim on August 30, 1976. More than four years later, on September 5, 1980, the claim was initially denied. Although the claimant promptly sought reconsideration, another year passed before the second denial on December 16, 1981. Again, the widow moved promptly to request a hearing. That hearing was held two and one-half years later, on June 27, 1984. The ALJ did act promptly, rendering his decision on September 26, 1984. There was another two years between the claimant's appeal to the BRB and that body's decision on November 17, 1986.

It was never disputed that the claimant was entitled to the interim presumption that Eugene Farmer was totally disabled due to pneumoconiosis as a result of coal mine employment at the time of his death. The only question was whether that statutory presumption was rebutted. Throughout the administrative proceedings the ALJ and the BRB adopted a position that had the effect of placing upon the widow the burden of rebutting the presumption in her favor. This position was based on a misapplication of a regulation that placed the regulation at odds with the statute which set limits on the authority to promulgate regulations defining "total disability."

The petition for review is granted, the decision of the BRB is reversed, and the case is remanded with directions to enter a

decision awarding widow's benefits to petitioner, Laura Farmer.

WELLFORD, Circuit Judge, concurring.

I concur in the decision that the Secretary's finding of no changed circumstances of employment is not supported by substantial evidence in light of the record in this case. The proof and reasonable inferences to be drawn therefrom would indicate changed circumstances, including the deteriorating ability of the deceased in attempting to carry out difficult and *dirty* mining duties after 1975.

I therefore concur in parts I, II, and III of the decision and in the result reached.