933 F.2d 622
 Thelma POWELL, (Widow of Anthony Powell), Petitioner,
v.
PEABODY COAL COMPANY, and Old Republic Insurance Company,
Intervenors/Respondents,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Respondent.
 No. 90-2245.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 23, 1991.
Decided May 14, 1991.
 
 Charles A. Powell, Macon, Mo., for appellant.
 Mark E. Solomons and Laura Metcoff Klaus, Washington, D.C., for appellee.
 Before JOHN R. GIBSON and LOKEN, Circuit Judges, and ROSS, Senior Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 
 1
 This case involves a survivor's claim for benefits under the Black Lung Benefits Act, Title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. Secs. 901-60 ("the Act"). Thelma Powell, widow of coal miner Anthony Powell, appeals from the decision of the Benefits Review Board (the Board) denying benefits under the Act. Because we find that the denial of benefits is not supported by substantial evidence, we reverse the decision of the Board and remand for the payment of benefits.
 
 
 2
 Anthony Powell was born December 16, 1911, and worked as a miner from 1936 to 1976, before retiring at age sixty-five. During most of his forty years in mining, Powell worked in the "pit" as a "ground man" whose duties were to oil and maintain the loading machines. According to testimony at the hearing before the administrative law judge (ALJ), Powell was subjected to as much or more coal dust exposure than any man in the mine. In 1974, approximately three years before his retirement, Powell changed jobs at the mine and worked as a locomotive engineer and operator. On February 27, 1977, three months after he retired, Powell committed suicide.
 
 
 3
 This claim has been before the Board on two occasions. On February 17, 1984, ALJ V.M. McElroy credited the miner with forty years of coal mine employment and found that the miner had invoked the presumption of entitlement pursuant to section 411(c)(5) of the Act, 30 U.S.C. Sec. 921(c)(5), based on the fact that Powell died prior to March 1, 1978, and worked more than twenty-five years in coal mine employment prior to June 30, 1971. ALJ McElroy further found that the employer, Peabody Coal Company, had not established rebuttal of the presumption and accordingly, benefits were awarded. On appeal by the employer, the Board vacated the ALJ's finding of failure to rebut and remanded the case for reconsideration. Powell v. Peabody Coal Co., BRB No. 84-695 (April 30, 1987) (unpublished). On remand, ALJ Robert S. Amery concluded that the section 411(c)(5) presumption was rebutted based on his finding that Powell did not have pneumoconiosis at the time of his death. Judge Amery's finding was based on medical evidence in the record, consisting of a negative x-ray report, medical reports and a death certificate. Judge Amery also found that the miner's most recent job, as a locomotive operator, constituted his "usual coal mine work" and concluded that Powell was neither partially nor totally disabled due to pneumoconiosis. Accordingly, benefits were denied. On May 31, 1990, the Benefits Review Board affirmed the ALJ's finding of rebuttal and denial of benefits.
 
 
 4
 In reviewing an award of benefits under the Act, our function is to determine whether the Board properly adhered to its standard of review and whether the ALJ's findings are supported by substantial evidence. Oliver v. Director, OWCP, 888 F.2d 1239, 1240 (8th Cir.1989). The reviewing court may not set aside an inference because it finds the opposite one more reasonable, or because it questions its factual basis. However, where there is no evidence in the record such that "a reasonable mind might accept as adequate to support a conclusion" of rebuttal, a reversal of the ALJ's decision is proper. Mikels v. Director, OWCP, 870 F.2d 1407, 1409 (8th Cir.1989). In our consideration of this case, we note the long recognized purpose of the Black Lung Benefits Act which was intended to "resolve doubts in favor of the miner absent 'definitive medical conclusions.' " Id. at 1410 (quoting Bozwich v. Mathews, 558 F.2d 475, 480 (8th Cir.1977)).
 
 
 5
 It is uncontroverted that, due to Mr. Powell's more than twenty-five years of coal industry employment prior to June 30, 1971, and the occurrence of his death before March 1, 1978, his widow is presumptively entitled to benefits. See 30 U.S.C. Sec. 921(c)(5); 20 C.F.R. Sec. 727.204(a). Once this presumption is invoked, the burden of proof shifts to the employer to establish that the miner was not partially or totally disabled due to pneumoconiosis at the time of his death. 30 U.S.C. Sec. 921(c)(5).
 
 
 6
 The regulations limit the type of evidence that may be used to establish rebuttal of the 411(c)(5) presumption. None of the following items alone is considered sufficient to rebut the presumption:
 
 
 7
 (1) Evidence that a deceased miner was employed in a coal mine at the time of death;
 
 
 8
 (2) Evidence pertaining to a deceased miner's level of earnings prior to death;
 
 
 9
 (3) A chest X-ray interpreted as negative for the existence of pneumoconiosis;(4) A death certificate which makes no mention of pneumoconiosis.
 
 
 10
 20 C.F.R. Sec. 727.204(d).
 
 
 11
 Here, the ALJ based his finding of no pneumoconiosis primarily on two pieces of medical evidence. First, Judge Amery considered medical records which indicated that Dr. James E. Campbell examined Powell on June 22, 1966 and diagnosed a left inguinal hernia. Dr. Campbell again examined Powell on October 15, 1971 for an unrelated injury and diagnosed multiple rib fractures and multiple abrasions and contusions on his chest and extremities. At the same time, Dr. Stanley R. Szymanski read an x-ray of Powell on October 19, 1971 relating to Powell's injury and concluded that it was "an essentially negative chest."
 
 
 12
 Judge Amery also considered the miner's death certificate in finding that he did not suffer from pneumoconiosis. The death certificate, dated February 27, 1977, listed the cause of death as a gunshot wound to the head. No autopsy was performed. Judge Amery noted that the x-ray, medical reports and death certificate all failed to list pneumoconiosis and accordingly concluded that this evidence constituted substantial evidence of the absence of pneumoconiosis. We disagree and conclude instead that this evidence is of such limited probative value that as a matter of law it cannot constitute substantial evidence to rebut the presumption.
 
 
 13
 The negative chest x-ray was taken almost six years before the miner's death. There is no medical certainty respecting the time of onset of pneumoconiosis following a miner's exposure to coal dust, or after onset, when the pneumoconiosis might appear on an x-ray. It is not clear whether this x-ray was even interpreted "for the existence of pneumoconiosis" as required by 20 C.F.R. Sec. 727.204(d)(3), and therefore, this evidence is of little, if any, probative value to establish the absence of pneumoconiosis. See Amax Coal Co. v. Director, OWCP, 772 F.2d 304, 307 (7th Cir.1985). Similarly, where no autopsy or further inquiry was made, the death certificate, which only provided the immediate cause of death as a gunshot wound to the head, is of no medical or other evidentiary significance in detecting the presence of pneumoconiosis.
 
 
 14
 Under the circumstances of this case, we conclude that, as a matter of law, neither the negative x-ray nor the incomplete death certificate constitutes probative evidence of the absence of pneumoconiosis. Even when considered together, this evidence fails to rebut the section 411(c)(5) presumption.[1]
 
 
 15
 Contrary to Peabody Coal's assertion, our decision in Consolidation Coal Co. v. McGrath, 866 F.2d 1004 (8th Cir.1989), does not dictate a contrary result. Unlike the case before us, "extensive medical evidence that the miner did not suffer from pneumoconiosis" was presented in McGrath. Id. at 1007. For two years before his death, McGrath was treated by physicians who performed "several chest x-rays, a pulmonary function study, a lung biopsy and several arterial blood gas studies." Id. at 1005. Clearly, there is no similarity whatsoever to the instant case where the only medical evidence presented was a ten-year old medical report diagnosing Powell with a hernia and a six-year old medical report indicating that Powell had been treated for rib fractures and contusions.
 
 
 16
 The ALJ also provided a conclusory statement that Powell was not partially or totally disabled by pneumoconiosis at the time of his death. This conclusion was based on the ALJ's finding that Powell's job as a locomotive operator until the time of his death constituted his "usual coal mine work."
 
 
 17
 It has been well established both by statute and case law that "evidence of continued mine employment up to the time of death is legally insufficient to rebut the interim presumption.... The employer has the burden of showing that [the miner's] work was in fact 'usual.' " Consolidation Coal Co. v. Smith, 699 F.2d 446, 449 (8th Cir.1983). See also 30 U.S.C. Sec. 902(f)(1)(B)(i) ("a deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled"). The regulations provide that "[i]n the case of a deceased miner who was employed in a coal mine at the time of death, all relevant evidence, including the circumstances of such employment and the statements of the miner's spouse, shall be considered in determining whether the miner was totally disabled due to pneumoconiosis at the time of death." 20 C.F.R. Sec. 727.205(a).
 
 
 18
 The regulations define "partially disabled" as a miner's "reduced ability to engage in his or her usual coal mine work." 20 C.F.R. Sec. 727.204(b). "[C]hanged circumstances of employment indicative of reduced ability to perform coal mine work" is relevant to the determination of whether the miner was disabled. 20 C.F.R. Sec. 727.205(b).
 
 
 19
 In the instant case, testimony was presented at the hearing before the ALJ by Powell's co-workers and his widow that approximately three years prior to his retirement and death, Powell bid out of his previous job as ground man in the pit to a less strenuous job as locomotive brakeman, and later he transferred to an even less strenuous job as locomotive operator. Powell's widow testified that "it was getting too hard for him down there and he couldn't breathe." One of Powell's co-workers stated that Powell began failing in his last couple of years and that he was frequently short of breath and quickly fatigued. Powell's widow and children testified that in the last few years of his life Powell had difficulty breathing, was coughing a great deal, complained of chest pains and was not able to perform many activities at home.
 
 
 20
 The record shows that the evidence introduced by the employer fails to support a finding of no disability, especially in light of the lay testimony indicating that Powell was at least partially disabled at the time of his death. See Begley v. Consolidation Coal Co., 826 F.2d 1512, 1515 (6th Cir.1987).
 
 
 21
 Based on the foregoing, we conclude that the ALJ's finding of rebuttal is not supported by substantial evidence. Because we find that there is no probative evidence in the record to support a conclusion that Peabody Coal has carried its burden of showing that Powell did not have pneumoconiosis or was not disabled at the time of his death, we conclude that there is no reason to remand for further proceedings. Accordingly the decision is reversed and the case is remanded for the payment of benefits. See Yauk v. Director, OWCP, 912 F.2d 192, 196 (8th Cir.1989).
 
 
 
 [1]
 Because we conclude that the record is lacking in evidence sufficient to establish a rebuttal of the presumption, we need not address the parties' arguments concerning the relevance of lay testimony to establish the existence of pneumoconiosis