957 F.2d 360
 FREEMAN UNITED COAL MINING COMPANY, Petitioner,
v.
Betty STONE, Widow of Huie Stone, Respondent,
and
Director, Benefits Review Board, U.S. Department of Labor,
Party in Interest.
 No. 91-1754.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 28, 1992.
Decided Feb. 24, 1992.
 
 Kathryn S. Matkov, argued, Gould & Ratner, Chicago, Ill., for Freeman United Coal Min. Co.
 Harold B. Culley, Jr., argued, Raleigh, Ill., for Betty Stone.
 Eileen N. McCarthy, Dept. of Labor, Appellate Litigation, Barbara J. Johnson, Roscoe C. Bryant, III, Lawrence W. Rogers, Dept. of Labor, Office of the Solicitor, Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., for Office of Workers' Compensation Program.
 Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.
 Before BAUER, Chief Judge and POSNER, and COFFEY, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Freeman United Coal Mining Company (Freeman Coal) seeks review of a decision by the Benefits Review Board of the United States Department of Labor (BRB) granting survivor's benefits to Betty Stone (claimant), widow of former Freeman Coal miner Huie Stone (miner), under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. We reverse.
 
 I. FACTS AND PRIOR PROCEEDINGS
 
 2
 Huie Stone labored at one of Freeman Coal's mines for fifteen years before dying of a heart attack at work on March 17, 1981. His widow, Betty Stone, filed for survivor's benefits under the Black Lung Benefits Act on March 21, 1981. The death certificate listed the immediate cause of the miner's death as an acute myocardial infarction. The certificate also noted two conditions causing the heart attack: (1) a healed myocardial infarction (Mr. Stone had survived two heart attacks), and (2) pigmented pulmonary fibrosis (black lung). Doctor A.J. Venables, the Board-certified pathologist who signed the death certificate, later conducted an autopsy to determine if the miner had black lung, finding that he had. Doctor Venables then sent histologic slides of lung tissue and lymph node to Dr. Eggleston, another Board-certified pathologist and professor and Director of Surgical Pathology at the Johns Hopkins Hospital, who was an agreed-upon neutral medical expert acting at the request of the Administrative Law Judge (ALJ). Doctor Eggleston found no substantial evidence of coal worker's pneumoconiosis (CWP), stating that the miner's death could be "largely, if not entirely, attributed to his severe coronary arteriosclerosis and the resulting left-sided congestive heart failure." A third Board-certified pathologist, Dr. Echols A. Hansbarger, also examined the autopsy slides and available medical records and reached similar conclusions, writing that "Mr. Stone died as a result of Atherosclerotic Coronary Heart Disease," and "Since Mr. Stone did not suffer from Coal Worker's Pneumoconiosis or any other Occupational Pneumoconiosis of the Lung, it obviously could have had no impact on his demise."
 
 
 3
 In his first decision the ALJ denied benefits because there was no evidence that the miner had been totally disabled by pneumoconiosis at the time of death. The ALJ wrote that "no physicians stated that decedent's disability was due to pneumoconiosis. Moreover, the coroner's certificate of death and Claimant's testimony establish that decedent died of a heart attack." Decision and Order Denying Benefits, at 8. The BRB remanded the case, however, because the ALJ had failed to consider the claim under 20 C.F.R. § 718.303, which applied because the complaint had been filed before January 1, 1982.
 
 
 4
 Reconsidering the evidence under § 718.303, the ALJ awarded benefits. Section 718.303(a)(1) creates a presumption that a miner with ten years of experience died due to CWP if: (1) there were multiple causes of death, and (2) it is medically infeasible to determine which disease caused death or the extent to which a respirable disease contributed to death. Because the death certificate listed multiple causes of death, including CWP, the ALJ found the first part of the presumption satisfied. As to the infeasibility of determining the actual cause of death, the ALJ relied on Dr. Venables's autopsy report, wherein he found CWP but did not describe its impact. This silence was deemed substantial evidence of the infeasibility of determining the true cause of death. The ALJ gave controlling weight to Dr. Venables's opinion because he had access to the miner's body, while doctors Eggleston and Hansbarger only reviewed the autopsy slides. Accordingly, because of the minimal weight given to the consulting experts' opinions, the ALJ also held that Freeman Coal could not rebut the presumption of total disability due to CWP. 20 C.F.R. § 718.303(b). The BRB affirmed the ALJ's decision in all respects, finding that he had applied the correct legal standard in invoking the presumption and in weighing the medical evidence.
 
 II. DISCUSSION
 
 5
 Though this is an appeal from the BRB's decision, we actually review the ALJ's decision, which must be affirmed if rational, in accord with the law, and supported by substantial evidence. Peabody Coal Co. v. Helms, 859 F.2d 486, 489 (7th Cir.1988). Substantial evidence is "more than a scintilla. It is such relevant evidence as a rational mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence may be less than a preponderance of the evidence, however, and "a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." Smith v. Director, OWCP, 843 F.2d 1053, 1057 (7th Cir.1988).
 
 
 6
 The initial question before us is whether the ALJ acted properly in invoking the interim presumption of disability under § 718.303(a). This presumption arises when there are multiple causes of death and it is medically infeasible to discern the role respirable disease played in causing death. In this case the death certificate listed a heart attack as the immediate cause of death, but named black lung as a minor contributing cause. The ALJ thought this was enough to show that there were multiple causes of death, but this finding is not supported by substantial evidence, and was therefore erroneous. For starters, both Dr. Eggleston and Dr. Hansbarger, Board-certified pathologists with qualifications at least equal to Dr. Venables's, found that the miner did not even have CWP. This conclusion is bolstered by several facts. First, throughout his long history of medical treatment for his heart problems, Mr. Stone never complained of respiratory trouble to his doctors, and he never filed a formal complaint with the Department of Labor. Additionally, no doctor ever diagnosed Mr. Stone as having CWP or any other respirable disease, or even found the symptoms of respirable disease. Finally, x-rays taken less than a year before Mr. Stone's death showed no signs of CWP. See ALJ's Decision and Order Denying Benefits, pp. 4-6 (summarizing x-ray evidence). Contrast this with the fact that the death certificate clearly listed the cause of death as a heart attack, that the miner had suffered two prior heart attacks weakening the muscle, and that he had longstanding cardiac disease, and it seems clear that neither CWP nor any other respirable disease caused or contributed to Mr. Stone's death. The overwhelming weight of the evidence, then, precludes invoking the § 718.303 presumption, as the claimant cannot show that there were multiple causes of death, much less that one of those causes was a respirable disease.
 
 
 7
 The ALJ, however, discounted the opinions of Dr. Eggleston and Dr. Hansbarger, invoking the presumption by relying instead on the autopsy report and death certificate completed by Dr. Venables. Though ALJs have discretion in weighing conflicting medical evidence, they are still required to at least consider all of the relevant evidence presented. Wetherill v. Director, OWCP, 812 F.2d 376, 382 (7th Cir.1987). Under Wetherill, an ALJ may not disregard the conclusions of a qualified physician absent a valid legal basis or countervailing clinical evidence. Id. Nothing in the record suggests that access to the body enhances the accuracy of diagnoses based on autopsy evidence, so the ALJ's proffered ground does not support his preference for Dr. Venables's opinion. Further, it cannot be said that Dr. Venables's opinion provides countervailing clinical evidence, as he fails to discuss what, if any, role CWP played in the miner's death. Dr. Eggleston and Dr. Hansbarger, on the other hand, plainly found that Mr. Stone's heart trouble, culminating in his third heart attack, was the sole cause of death. We cannot agree with the ALJ's decision to ignore this evidence.
 
 
 8
 In light of all of the evidence presented, we find that the claimant failed to meet the requirements for invoking the § 718.303 presumption. The record reveals that the sole cause of death was a heart attack, and no one ever thought Mr. Stone had CWP or any other respirable disease until Dr. Venables found it in an autopsy--and his findings were directly contradicted by two qualified experts. Therefore the ALJ's decision to invoke the § 718.303 presumption is not supported by substantial evidence, and the decision of the BRB awarding benefits is
 
 
 9
 REVERSED.