**FREEMAN UNITED COAL MINING COMPANY, Petitioner,**

v.

**Diana M. HUNTER, Benefits Review Board, et al., Respondents.**

No. 94–3876.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1995.

Decided May 2, 1996.

Kathryn S. Matkov, Karin T. O'Connell (argued), Gould & Ratner, Chicago, IL, for petitioner.

Thomas O. Shepherd, Jr., Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, Donald S. Shire, Dept. of Labor, Office of the Solicitor, Washington, DC, for Benefits Review Bd.

John H. Secaras, Dept. of Labor, Chicago, IL, Thomas S. Williamson, Jr., Dept. of Labor, Washington, DC, for U.S. Dept. of Labor.

Harold B. Cully (argued), Cully & Wissore, Raleigh, IL, for Diana M. Hunter.

Ida Castro, Dept. of Labor, Appellate Litigation, Washington, DC, Patricia M. Nece, Dorothy L. Page, Dept. of Labor, Office of the Solicitor, Washington, DC, for Office of Workers' Compensation Programs.

Before FLAUM, KANNE, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Thomas Hunter, Jr., died in 1973 after working for nineteen years as a coal miner. An administrative law judge ordered Freeman United Coal Mining Company to pay black lung benefits to his widow Marjorie Hunter (who died in 1992) and their disabled daughter, Diana Hunter. The Benefits Review Board affirmed the award. Freeman seeks review of the Board's decision, contending that it presented sufficient evidence to rebut the interim presumptions that Hunter was totally disabled due to pneumoconiosis (commonly known as black lung disease) at the time of his death and that his death was due at least in part to pneumoconiosis. We do not agree that Freeman rebutted the presumption that Mr. Hunter was totally disabled at the time of his death and on that basis we affirm the award of benefits.

### I.

Thomas Hunter suffered a heart attack and died on December 26, 1973. He was forty-six years old. Prior to his death, Mr. Hunter had worked in Freeman's employ as a shuttlecar (or "shuttlebuggy") operator in an underground coal mine. Contending that pneumoconiosis contributed to her husband's death, Marjorie Hunter filed a claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* In August 1980, the Department of Labor issued an initial finding of eligibility, which Freeman controverted. The case was then assigned to an Administrative Law Judge for hearing.

Hunter's death certificate, signed by his physician, Dr. Bill R. Fulk, identified the cause of death as "acute myocardial infarction" resulting from arteriosclerotic cardiovascular disease, but pulmonary anthracosis and moderate emphysema were listed as additional significant conditions. A report prepared by autopsy prosecutor Virgil R. Bleisch, M.D., likewise noted moderate pulmonary anthracosis without fibrosis, subpleural scarring indicative of healed granulomatous (inflammatory) disease, and moderate pulmonary emphysema.

At the evidentiary hearing before the ALJ, Marjorie Hunter acknowledged that her husband had smoked approximately one-half pack of cigarettes per day for twenty five years and was taking nitroglycerin for his heart condition before his death. She confirmed that her husband had worked as a shuttlecar operator and estimated that he had worked an average of five days per week until his death. She also testified that her husband had experienced breathing difficulties that on occasion caused him to stay home from work in the last two to three years of his life, particularly in his final year. Eventually, Mr. Hunter was no longer able to mow the lawn, hunt or fish, or perform "handyman" chores around the house.

In addition to the death certificate and Dr. Bleisch's report, the evidence presented to the ALJ included the reports of pathologist Echols A. Hansbarger, Jr., M.D., who had reviewed the available medical records, including the autopsy protocol and the autopsy slides, and Dr. Roger S. Mitchell, Jr., who had reviewed Dr. Bleisch's findings on behalf of the Department of Labor. Dr. Hansbarger concluded that the cause of Mr. Hunter's death was atherosclerotic coronary heart disease. Although Dr. Hansbarger acknowledged that Mr. Hunter's lungs displayed mild anthracotic pigmentation, he found the degree of such pigmentation insufficient to warrant a finding of occupational pneumoconiosis and was confident that pneumoconiosis

did not contribute to Mr. Hunter's death. Dr. Mitchell likewise opined that Mr. Hunter had died of coronary heart disease and discovered nothing in the autopsy findings upon gross examination that would indicate that he suffered from coal worker's pneumoconiosis. Dr. Mitchell did note there was evidence of paneobular emphysema with bullae, but ruled out pneumoconiosis or exposure to coal dust as a cause. Finally, Dr. Mitchell acknowledged his inability to discern whether the pulmonary abnormalities noted were sufficient to have caused a chronic respiratory impairment and an inability to continue mining coal.

Following two appeals to the Benefits Review Board and other procedural skirmishes that need not concern us here, the ALJ concluded that Freeman had failed to rebut the presumptions triggered by 20 C.F.R. § 727.203(a)(1) that Mr. Hunter had been totally disabled by pneumoconiosis at the time of his death and that his death was due to pneumoconiosis. Although Mr. Hunter had continued to work until the time of his death, the ALJ reasoned, the evidence did not establish either that Mr. Hunter was in fact performing his usual work or comparable and gainful work, or that he was able to do so. See § 727.203(b)(1), (2). Nor, in the ALJ's view, did the evidence establish that Mr. Hunter's presumptive disability and death were not due, in whole or in part, to pneumoconiosis resulting from his employment in a coal mine. See § 727.203(b)(3). Although Drs. Mitchell and Hansbarger both concluded that Mr. Hunter's death was due entirely to coronary heart disease and not to any degree by pneumoconiosis, the ALJ concluded that other evidence contradicted and outweighed their opinions. Dr. Fulk, Mr. Hunter's treating physician, believed that Mr. Hunter had exhibited clinical signs of pneumoconiosis and had identified that as a factor contributing to his death on the death certificate. Because Dr. Fulk had treated Mr. Hunter for the last two years of his life, whereas neither Dr. Mitchell nor Dr. Hansbarger had ever examined him, the ALJ gave greater weight to Dr. Fulk's opinion. Moreover, he noted, Dr. Bleisch had found on autopsy that Mr. Hunter's lungs reflected moderate pulmonary anthracosis. Because Freeman had thus failed to rebut the interim presumptions of disability and death due to pneumoconiosis, the ALJ found Mrs. Hunter and the Hunters' dependent daughter, Diana, entitled to benefits.

The Benefits Review Board affirmed the ALJ's determination. Noting at the outset that Freeman must rebut both of the presumptions triggered by section 727.203(a) in order to defeat Mrs. Hunter's claim for benefits, the Board focused its consideration on Freeman's efforts under section 727.203(b)(3) to show that Mr. Hunter's death was not due at least in part to pneumoconiosis. Freeman argued that the ALJ had erred in crediting Dr. Fulk's opinion that pneumoconiosis had contributed to Mr. Hunter's demise over the contrary opinions of Drs. Mitchell and Hansbarger. But the Board concluded that the ALJ had not abused his discretion in doing so. In the Board's view, the ALJ's decision to credit Dr. Fulk's opinion was not simply a rote determination based on his status as Mr. Hunter's treating physician but a permissible credibility assessment that found ample support in the record. Dr. Fulk was the only physician to have examined Mr. Hunter, the Board pointed out, and (as the ALJ had noted) he had treated Mr. Hunter in the last two years of his life and during the hospital stay culminating in his death. Dr. Fulk had signed the death certificate citing pneumoconiosis as a factor contributing to Mr. Hunter's death; he had also written a letter several years later confirming that determination, a letter that the Board found adequately reasoned and not, as Freeman insisted, reflective of bias. Finally, Dr. Fulk's opinion was corroborated by Dr. Bleisch's autopsy findings. The Board thus sustained the ALJ's conclusion that Freeman had failed to rebut the presumption that pneumoconiosis was a contributing cause of Mr. Hunter's death and that Marjorie Hunter was therefore entitled to benefits. Freeman filed a timely notice of appeal to this court from the Board's decision.

Marjorie Hunter died on April 13, 1992. The Hunters' only child, Diana,[1] is disabled

---

1. Marjorie Hunter had another daughter from a previous marriage.

due to brain damage she suffered at birth. She is unable to care for herself and presently resides in a group home. As a surviving disabled dependent of Mr. and Mrs. Hunter, she is entitled to any black lung benefits Mrs. Hunter would have received as Mr. Hunter's widow. 30 U.S.C. §§ 902(g)(2)(B), 922(a)(3). Having been so apprised, we granted Diana's motion pursuant to Fed. Rule App. P. 43 to be substituted as a respondent in the place of her deceased mother. Diana Hunter has been paid interim benefits by the Office of Workers' Compensation during the pendency of this appeal.

## II.

The Black Lung Benefits Act, 30 U.S.C. § 901, *et seq.*, "provide[s] benefits ... to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." § 901(a). Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." § 902(b). Mr. Hunter's work as a shuttlecar operator in Freeman's mines qualifies him as a "miner" whose dependents are entitled to seek benefits under the Act. § 902(a), (d), (g).

We review the decision of the ALJ, despite the fact that the appeal comes to us from the Benefits Review Board. *E.g., Consolidation Coal Co. v. Office of Workers' Compensation Programs*, 54 F.3d 434, 436 (7th Cir.1995); *Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1275 (7th Cir.1993). Although we carefully scrutinize the record and the ALJ's findings, we take care not to reweigh the evidence or to favor our own judgment above the ALJ's. *Consolidation Coal*, 54 F.3d at 436. Our task is simply to "determine whether the ALJ's decision is rational, supported by substantial evidence, and consistent with governing law." *Id.* (collecting cases). "Substantial evidence" amounts to more than a scintilla, but not necessarily a preponderance. *Freeman United Coal Mining Co. v. Stone*, 957 F.2d 360, 362 (7th Cir.1992); *Moore v. Director, Office of Work-*

ers' *Compensation Programs*, 835 F.2d 1219, 1220 (7th Cir.1987). " 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S., 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Once we have examined the ALJ's findings, we look to the Board's decision to confirm that it appropriately reviewed the ALJ's determination and committed no legal error in doing so. *Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1318 (7th Cir.1995); *see also Mitchell v. Office of Workers Compensation Programs*, 25 F.3d 500, 505 (7th Cir.1994).

Marjorie Hunter filed her claim for benefits on January 24, 1974. Consequently, the claim is governed by the interim black lung regulations found at 20 C.F.R. § 727. *See Zeigler Coal Co. v. Office of Workers' Compensation Programs*, 23 F.3d 1235, 1236–37 (7th Cir.1994); *Battram*, 7 F.3d at 1275. Section 727.203(a)(1) provides that a deceased individual who worked for at least ten years in coal mines will be presumed to have been totally disabled by pneumoconiosis arising out of that employment at the time of his death, and that he died of such pneumoconiosis, when a chest x-ray, biopsy, or autopsy establishes the existence of pneumoconiosis. It is undisputed that Dr. Bleisch's postmortem finding of pulmonary anthracosis (together with Dr. Hansbarger's notation of anthracotic pigmentation of in the lungs) enabled Mrs. Hunter to invoke these presumptions before the ALJ. *See* ALJ's Decision and Order Denying Benefits on Remand at 3 (June 3, 1987) (citing *Bueno v. Director, Office of Workers' Compensation Programs*, 7 BLR 1–337 (1984), and *Smith v. Island Creek Coal Co.*, 2 BLR 1–1178 (1980)); *Peabody Coal Co. v. Shonk*, 906 F.2d 264, 267–69 (7th Cir.1990).[2] As a result, the burden shifted to Freeman to rebut the presumption that Mr. Hunter was entirely disabled by pneumoconiosis when he died as well as the presumption that his death was due at least in part to this disease. *E.g., Freeman United Coal Mining Co. v. Benefits Review Bd.*, 919 F.2d 451, 454 (7th Cir.1990). Longstanding Board prece-

---

2. As a matter of law, pulmonary anthracosis is pneumoconiosis. *Shonk*, 906 F.2d at 268.

dent reveals that Freeman's failure to rebut either of these two presumptions entitles Diana Hunter to an award of benefits. *See Sammons v. Wolf Creek Collieries,* 1994 WL 712499, at *2 (Benefits Review Bd. Nov. 25, 1994) (per curiam); *Jennings v. Brown Badgett, Inc.,* 9 BLR 1–94, 1986 WL 66248, at *1 (Benefits Review Bd.1986) (per curiam) (collecting cases), *rev'd on other grounds,* 842 F.2d 899 (6th Cir.1988).

We turn initially to the ALJ's conclusion that Freeman failed to rebut the presumption that Mr. Hunter's death was due in part to pneumoconiosis. Freeman argues here, as it did to the Board, that in the face of conflicting medical opinion as to whether black lung disease contributed to Mr. Hunter's demise, the ALJ mechanically credited the views of Mr. Hunter's treating physician, a practice we have repeatedly disapproved. *E.g., Consolidation Coal,* 54 F.3d at 438 (collecting cases). Freeman's argument has some merit. The ALJ justified his reliance on Dr. Fulk's opinion based on the fact that Fulk had treated Hunter whereas neither Dr. Hansbarger nor Dr. Mitchell had even examined his body. ALJ's Order Granting Employer's Motion for Reconsideration and Awarding Benefits (April 27, 1993) (hereinafter, "ALJ Op.") at 6. We noted, however, in *Freeman United Coal Mining Co. v. Stone,* 957 F.2d 360 (7th Cir.1992), that absent any indication in the record "that access to the body enhances the accuracy of diagnoses based on autopsy evidence," it is improper to disregard the opinions of qualified experts merely because they are in conflict with the findings of the physician who performed the autopsy on the miner and signed his death certificate. *Id.* at 362–63. Dr. Fulk, of course, did not merely sign Mr. Hunter's death certificate. He did not perform the autopsy, but as both the ALJ and the Board pointed out, he had treated Mr. Hunter for two years and had attended to him during his final hospital stay. ALJ Op. at 5–6; Board Op. at 4. Yet, the record is devoid of evidence revealing what observations, if any, Dr. Fulk was able to make as the treating physician that illuminate the degree to which pneumoconiosis may have led to Mr. Hunter's death. For example, Dr. Fulk wrote a letter in 1976 indicating that Mr. Hunter had exhibited

"clinical signs of pulmonary anthracosis," but he did not describe those signs. To this extent, the ALJ may have given undue weight to Dr. Fulk's findings based solely on his status as Mr. Hunter's treating physician. Dr. Bleisch's observation of moderate pulmonary anthracosis does corroborate Dr. Fulk's opinion, as both the ALJ and the Board also noted. ALJ Op. at 6; Board Op. at 4. Yet neither the ALJ's decision nor the Board's adequately reconciles the apparent conflict between Dr. Bleisch's observation and the conclusion of Drs. Mitchell and Hansbarger that pneumoconiosis played no role in Mr. Hunter's death. If the award of benefits were based solely on Freeman's purported failure under subsection (b)(3) to rebut the presumption that pneumoconiosis contributed to Mr. Hunter's death, we might be inclined to vacate the award and, at the least, remand for further consideration.

■ However, the ALJ also concluded that Freeman had failed under subsections (b)(1) and (b)(2) to rebut the presumption that Mr. Hunter was totally disabled by pneumoconiosis at the time of his death, and this aspect of his decision we find to be secure. As the ALJ pointed out, there is scant evidence in the record bearing on Mr. Hunter's ability to perform his usual work as a shuttlecar operator or comparable labor. We noted earlier that Mrs. Hunter testified that her husband had worked, on average, five days per week until his hospitalization and death. That testimony, Freeman argues, is enough to rebut the presumption that he was disabled. It is not. Her testimony establishes no more than the fact that her husband continued to show up for work. As is by now well established, that fact alone is not dispositive of whether he was able to perform his usual or comparable responsibilities. 20 C.F.R. § 727.205(a) (implementing mandate of 30 U.S.C. § 902(f)(1)(B)(i)); *see Patrich v. Old Ben Coal Co.,* 926 F.2d 1482, 1491 (7th Cir.1991); *Powell v. Peabody Coal Co.,* 933 F.2d 622, 625–26 (8th Cir.1991); *Farmer v. Rogers,* 839 F.2d 269, 273–74 (6th Cir.1988); *Consolidation Coal Co. v. Smith,* 699 F.2d 446, 449 (8th Cir.1983). Nothing in Mrs. Hunter's testimony suggests that her husband remained able to perform his usual

work as a shuttlecar operator (or comparable work); indeed, her testimony that in the final years of his life, Mr. Hunter had been experiencing increasing breathing difficulties and could no longer engage in household activities like mowing the lawn serves only to cast further doubt on his work capacity. In any event, it was Freeman's burden to present evidence concerning Mr. Hunter's ability to do his job, and it elicited no testimony whatsoever on this score.[3] It therefore failed to rebut the presumption that Mr. Hunter was totally disabled at the time of his death.

### III.

Because Freeman failed to rebut the presumption that Thomas Hunter was completely disabled at the time of his death, his daughter Diana is entitled to survivor's benefits. The ALJ's decision in this respect is rational, supported by substantial evidence, and consistent with governing law. The ALJ's order granting benefits and the Board's decision upholding the award are, therefore,

AFFIRMED.

---

**3.** Freeman argues in its brief that "[t]here was no transfer or reassignment, there was no modification of duties or work schedule," and that, consequently, Mr. Hunter must have been performing his usual duties as a shuttlecar operator immediately prior to his death. Freeman Br. 12. Yet, Freeman cites no evidence in the record (and we have found none) supporting this contention. Rebuttal of the presumption that the coal worker was disabled requires evidence, not mere argument. That Mrs. Hunter did not testify to any change in her husband's duties, as Freeman points out (Freeman Br. 12), is immaterial. It was not her burden to establish Mr. Hunter's incapacity once the interim presumptions had been invoked, but Freeman's burden to prove the contrary. *See Farmer*, 839 F.2d at 273–74; *Smith*, 699 F.2d at 449.