**Ameday J. MIGLIORINI, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.**

**No. 89–1133.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 19, 1989.

Decided April 4, 1990.

Rehearing and Rehearing En Banc Denied May 17, 1990.

Kenneth A. Kozel, LaSalle, Ill., for petitioner.

Michael J. Denney, Nicholas J. Levintow, Dept. of Labor, Office of Sol., Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., Sylvia T. Kaser, Dept. of Labor, Black Lung Div., Washington, D.C., for respondent.

Carla Chapman, Benefits Review Bd., Dept. of Labor, Washington, D.C.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Ameday J. Migliorini petitions this court for review of a decision by the Department of Labor's Benefits Review Board ("Board"), which affirmed the denial of his application for benefits under the Black Lung Benefits Reform Act of 1969, as amended. 30 U.S.C. § 901 *et seq.* We affirm.

I

Migliorini is an 81 year-old miner with an eighth-grade education who worked in various underground coal mines from approximately 1923 to 1938. He applied for black lung benefits on May 20, 1974; therefore, his claim is evaluated pursuant to the Department of Labor regulations at 20 C.F.R. § 727.200 *et seq.*[1] *Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 137–38, 108 S.Ct. 427, 428–29, 98 L.Ed.2d 450 (1987). Migliorini's application was denied by the Office of Workers' Compensation Programs (OWCP), and he requested a hearing.

ALJ John C. Holmes conducted a hearing on November 4, 1983.[2] The medical evidence before the ALJ consisted of a report of a November, 1980 examination by Dr. Richard D. Sturm and Dr. Shirley A. Conibear, which included a pulmonary function study, x-ray, EKG, and blood test; a report of a December 1979 x-ray, a re-reading of this x-ray, and an interpretation of an August 1979 x-ray by a "B" reader,[3] Dr. Reginald Green; a Department of Labor examination form completed in August 1979 by Dr. W. Y. Kim; and a June 1974 pulmonary function study. ALJ Holmes also heard testimony from Migliorini and his son, and examined affidavits from coal miners who had worked with Migliorini.

The ALJ denied Migliorini's application in November, 1984. He held that the miner could not invoke the interim presumption of total disability due to pneumoconiosis because, although Migliorini worked for more than ten years in coal mines, the x-ray evidence did not disclose pneumoconiosis, and the physicians' opinions did not establish that Migliorini was totally disabled from pneumoconiosis. 20 C.F.R. § 727.203(a)(1), (4).[4] The ALJ also concluded that Migliorini was not eligible for black lung benefits under "the more stringent requirements" of 20 C.F.R. § 718.100 *et seq.* (the permanent Department of Labor regulations), or under the interim Department of Health, Education and Welfare regulations at 20 C.F.R. § 410.400 *et seq.*[5]

Migliorini appealed to the Board, and the Board remanded to the ALJ so that he could address the physical restrictions placed on the miner by Dr. W. Y. Kim pursuant to 20 C.F.R. § 727.203(a)(4). Dr. Kim estimated that Migliorini could walk one to two blocks, climb one flight of

---

1. "Under 20 C.F.R. § 727.203(a)(1)–(4), a coal miner is presumed totally disabled due to pneumoconiosis if he has engaged in coal miner employment for at least ten years and can establish one of the following medical requirements:
   (1) A chest roentgenogram (x-ray), biopsy, or autopsy establishing the existence of pneumoconiosis,
   (2) Ventilatory studies conforming to values set by regulation,
   (3) Blood gas studies conforming to values set by regulation, or
   (4) Other medical evidence, including the documented opinion of one physician exercising reasoned medical judgment, establishing the presence of a totally disabling respiratory or pulmonary impairment."
   *Meyer v. Zeigler Coal Co.,* 894 F.2d 902, 904 (7th Cir.1990). Only the interim presumption is at issue in this case.

2. One prior hearing was held in early 1983, but the transcription was lost, necessitating another hearing.

3. A "B" reader is a radiologist who has taken a Department of Health and Human Services examination which demonstrates his proficiency in reading and classifying x-rays for presence of pneumoconiosis. *Freeman United Coal Mining Co. v. Benefits Review Board,* 879 F.2d 245, 246 n. 2 (7th Cir.1989) (citation omitted); *Smith v. Director, OWCP,* 843 F.2d 1053, 1055 n. 4 (7th Cir.1988) (citation omitted).

4. Neither Migliorini's pulmonary function study nor his blood gas study qualified to establish a disabling lung impairment under 20 C.F.R. § 727.203(a)(2), (3).

5. *See Mullins Coal Co.,* 484 U.S. at 138–39, 108 S.Ct. at 429–30 for a discussion of the various regulations and the statutory authority on which they are based.

stairs, and lift ten pounds. The Board also ordered the ALJ to consider Migliorini's eligibility under 20 C.F.R. Part 410, Subpart D (410.400 *et seq.*) if he did not invoke the interim presumption under 20 C.F.R. § 727.203(a)(4). On remand, the ALJ discredited Dr. Kim's opinion because he gave "no explanation" for the limitations he placed on Migliorini.[6] The Board affirmed the ALJ's decision and Migliorini petitioned this court for review.

## II

Although Migliorini seeks review of the Board's decision, "our task is to review the judgment of the ALJ, which was upheld by the Board." *Collins v. Old Ben Coal Co.,* 861 F.2d 481, 486 (7th Cir.1988) (citing *Dotson v. Peabody Coal Co.,* 846 F.2d 1134, 1137 (7th Cir.1988)). Our initial question is whether the ALJ's decision was rational, supported by substantial evidence, and not contrary to law. *See* 33 U.S.C. § 921(b)(3) (1982), as incorporated by 30 U.S.C. § 932(a); *Pancake v. Amax Coal Co.,* 858 F.2d 1250, 1255 (7th Cir.1988) (citing *Amax Coal Co. v. Burns,* 855 F.2d 499, 501 (7th Cir.1988)). "While we necessarily review the entire record, we neither decide the facts anew nor substitute our own judgment for that of the court." *Zettler v.*

*Director, OWCP,* 886 F.2d 831, 834 (7th Cir.1989) (per curiam).

## A

■ Migliorini first argues that the ALJ's decision to credit him with less than 16 years of coal mine employment is erroneous and based on the ALJ's bias against him.[7] While we may consider one statement made by the ALJ unnecessarily speculative,[8] we nonetheless conclude that his computation of the years Migliorini spent in the mines is rational, not contrary to law, and supported by substantial evidence. *Collins,* 861 F.2d at 486; *Peabody Coal Co. v. Helms,* 859 F.2d 486, 489 (7th Cir. 1988).[9]

■ On his application for benefits, Migliorini claimed to have worked from 1923 to 1933. He submitted affidavits at that time evidencing only those ten years of employment.[10] At the hearing, however, the miner introduced into evidence other affidavits indicating that he worked in the mines until 1938, and testified that he worked from 1923 to 1938. When Migliorini's attorney asked him if he worked year-round, the miner replied that "[s]ometimes the mine shut down in April or May ... until September." Upon further questioning by the ALJ,[11] Migliorini admitted that,

---

6. The ALJ failed to discuss the miner's potential eligibility under 20 C.F.R. § 410, Subpart D on remand. The ALJ previously rejected Migliorini's claim under 20 C.F.R. § 410.400 (the interim HEW regulations) as well as 20 C.F.R. § 718.200 *et seq.* (the permanent Labor regulations). Migliorini did not raise the issue of the ALJ's failure to reevaluate his claim under these provisions on remand before the Board, and he does not raise the issue before this tribunal.

7. The Director argues that the ALJ's computation that Migliorini worked ten years is harmless because, in any event, the miner would have had to prove total disability, which he did not do. In light of our conclusion that the ALJ's finding regarding Migliorini's length of employment is supported by substantial evidence, we do not reach the Director's argument.

8. The ALJ stated that the miner "probably does not desire to work now because of advanced age." But "the Act does not compensate disability due to age...." *Meyer, supra,* n. 1, at 908.

9. For Migliorini to succeed on the issue of ALJ prejudice, he would have had to point to some-

thing outside the record indicating prejudgment or to have demonstrated that the ALJ's factual findings were undermined by his animus toward the miner. *See generally Pearce v. Sullivan,* 871 F.2d 61, 63–64 (7th Cir.1989) (a social security disability case in which the claimant alleged that the ALJ was biased due to a statement made at the hearing indicating his impatience with the claimant).

10. The Director of the Office of Workers' Compensation Programs (Director) did not contest the issue of length of employment before the hearing.

11. The miner charges that this line of questioning reveals the ALJ's prejudice toward him. While it is impossible to discern from the transcript the tone with which the ALJ asked these questions, we think the need for the questions arose because Migliorini alleged longer mine employment at the hearing than he had previously. Rather than playing the role of advocate for the Director, the ALJ attempted to clear up a discrepancy in the record by inquiring about the miner's employment.

although he normally worked five days a week and eight hours a day, he occasionally worked only two or three days a week. The miner repeated that the mine would shut down for several months during the summer and estimated that he worked approximately ten to twelve years on the whole.

The ALJ considered this evidence and credited the miner with "slightly in excess of 10 years" of coal mine employment. He emphasized that that was Migliorini's initial claim and that the later affidavits did not mention the summer months of inactivity, or less-than-forty-hour weeks, that Migliorini described at the hearing. Confronted with Migliorini's and the affidavits' contrary allegations, the ALJ weighed the evidence and found that Migliorini proved ten, but not sixteen years, of employment. As fact finder, the ALJ, not this court, reconciles conflicts in the record and assesses credibility. *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir.1988) (citing *Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797, 802 (7th Cir. 1977)). Because the ALJ's computation is rational, supported by substantial evidence, and not contrary to the law, his factual determination withstands review. *Amax Coal Co. v. Fagg*, 865 F.2d 916, 917 (7th Cir.1989) (citing statutory authority governing standards of review).

**B**

■ We turn next to Migliorini's second argument—that the record "was sufficient" to invoke the presumption and that the Director failed to rebut the presumption. We do not reach the second part of this argument because, under our standard of review, whether the evidence "was sufficient" to invoke the presumption is not the issue. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and may be less than the weight of the evidence. *See Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986) (citing *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607,

620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). Thus, a record may include substantial evidence to support granting *or* denying black lung benefits. *Smith*, 843 F.2d at 1056.

Migliorini argues (in only one sentence) that because a Dr. Lundstrom read a December 1979 x-ray as indicating emphysema, the ALJ should have invoked the interim presumption of total disability pursuant to 20 C.F.R. § 727.203(a)(1) (the presumption may be invoked if an x-ray "establishes the existence of pneumoconiosis"). Dr. Lundstrom's qualifications are not known. Dr. Reginald Green, a "B" reader, interpreted this x-ray as negative (0/0) for pneumoconiosis, but showing emphysema. *See* 20 C.F.R. § 718.201(b) (an x-ray classified as 0/0 "does not constitute evidence of pneumoconiosis"). Dr. Green considered the August 1979 x-ray unreadable. The miner fails to respond to the assertion that "emphysema" is not "pneumoconiosis." *See Preston v. Director, OWCP*, 6 BLR 1–1229, 1–1231 (Ben.Rev. Bd.1984) (an x-ray film that reveals evidence of emphysema, but is rated 0/0 for pneumoconiosis, is negative for pneumoconiosis under 20 C.F.R. § 727.203(a)(1)). Substantial evidence supports the ALJ's finding that Migliorini could not invoke the presumption based on this x-ray.

We turn next to Migliorini's assertion that the ALJ should have invoked the presumption pursuant to 20 C.F.R. § 727.203(a)(4), which permits invocation if "a documented opinion of a physician exercising reasoned medical judgment establishes the presence of a totally disabling respiratory or pulmonary impairment." The Board has held that a medical opinion may be adequately documented with only a physical examination and a claimant's symptoms and work history. *See, e.g., Hess v. Clinchfield Coal Co.*, 7 BLR 1–295, 1–296 (Ben.Rev.Bd.1984); *Buffalo v. Director, OWCP*, 6 BLR 1–1164, 1–1165 (Ben. Rev.Bd.1984). A reasoned medical opinion rests on documentation adequate to support the physician's conclusions. *Hess*, 7 BLR at 1–296; *Luther v. Director, OWCP*, 7 BLR 1–117, 1–119 (Ben.Rev.Bd.1984); *Fuller v. Gibraltar Coal Corp.*, 6 BLR

1-1291, 1-1293 (Ben.Rev.Bd.1984). Whether an opinion is reasoned is the ALJ's decision. *Arch Mineral Corp. v. Office of Workers' Comp.*, 798 F.2d 215, 221 (7th Cir.1987) (quoting *Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 363 (7th Cir. 1985)).

■ The miner claims that the opinions of Drs. Richard E. Sturm and Shirley C. Conibear, and Dr. Kim, establish that he is totally disabled by a pulmonary impairment. Migliorini first avers that the ALJ discredited the opinions of Drs. Sturm and Conibear, who examined him once on November 20, 1980. We disagree. The ALJ's decisions make clear that he credited the physicians' conclusion as supported by the objective medical evidence; the ALJ thus found their report reasoned. In his second decision, the ALJ specifically gave greater weight to the opinions of Drs. Sturm and Conibear than to Dr. Kim's opinions. *Meyer v. Zeigler Coal Co.*, 894 F.2d 902, 908–09 (7th Cir.1990) (the ALJ reasonably gave greater weight to the opinion of a physician that was based on objective medical testing as well as an examination and history).

The physicians diagnosed chronic bronchitis and noted that Migliorini's clinical picture (mild obstructive defect as shown on a pulmonary function test, "slowly worsening exertional dyspnea," hyper-inflated chest revealed by x-ray, and sixteen years' underground coal mine experience) was "compatible with coal workers' pneumoconiosis." The doctors opined that Migliorini "ha[d] a work impairment from his condition, in that he should not be exposed to irritant dust, fumes, gases, vapors, [and] mists," but also considered him "able to carry on normal activities of daily limits." [12]

The ALJ interpreted the latter statement by Drs. Sturm and Conibear as evidence that they did not find Migliorini totally disabled; rather, he inferred that Migliorini's lung condition did not interfere with his normal life. To be "totally disabled," Migliorini must be unable to do his usual coal mine job or another gainful, comparable job. 30 U.S.C. § 902(f)(1)(A). The physicians' statement that Migliorini could do normal, daily activities is silent on the exact issue of whether or not the miner could perform his usual coal mine work; the statement can be read as either supporting or not supporting a finding of total disability. *See Amax Coal Co. v. Burns*, 855 F.2d 499, 502 (7th Cir.1989) (comparing the "silent" record in *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588 (7th Cir.1985) and the record in *Burns*). However, pursuant to 20 C.F.R. § 727.203(a)(4), "the requisite medical evidence must itself establish the claimants' disability." *Zettler*, 886 F.2d at 837 (citing *Plutt v. Benefits Review Bd.*, 804 F.2d 597 (10th Cir.1986)). Therefore, to support directly Migliorini's claim, the physicians' opinion must be read as stating that *at most* the miner can perform *only* normal activities of daily living. While such an inference could be made, the ALJ did not make it. He stated that Drs. Sturm and Conibear concluded that Migliorini's respiratory condition "does not impair normal activity," and we are constrained to uphold his inference. A reviewing court cannot reject an inference made by an ALJ "merely because it finds the opposite conclusion more reasonable." *Burns*, 855 F.2d at 501; *see also Helms*, 859 F.2d at 489.

The ALJ's failure to discuss the portion of the report where the physicians specifically consider Migliorini's potential employment is not helpful to a reviewing tribunal. Drs. Sturm and Conibear opined that Migliorini "ha[d] a work impairment from [his lung] condition, in that he should not be exposed to irritant dust, fumes, gases, vapors, [and] mists...." The ALJ should have addressed this work restriction. However, the ALJ's omission does not warrant remand or reversal. The Board has held that a physician's prohibition against work in dusty environments is not tantamount to his concluding that the miner is "totally disabled." *See Neace v. Director,*

---

**12.** This last word is probably mistyped and should read "living." The physicians were referring to Migliorini's capacity to function daily.

 

*OWCP*, 867 F.2d 264, 268 (6th Cir.1989), *reh'g. denied*, 877 F.2d 495 (6th Cir.1989) (two physicians cautioned the miner "against further dust exposure, [but] their opinions [did] not, as such, constitute substantial evidence that Neace [was] necessarily totally disabled from his usual coal mine work") (citation omitted); *Coleman v. Harman Mining Corp.*, 6 BLR 1–601, 1–604 (Ben.Rev.Bd.1983); *New v. Director, OWCP*, 6 BLR 1–597, 1–600 (Ben.Rev.Bd. 1983).

The regulation requires that the medical opinion must establish that the claimant is totally disabled. The burden of proof lies with Migliorini. 20 C.F.R. § 727.203(a)(4). The Act states that a miner is totally disabled when "pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged...." 30 U.S.C. § 902(f)(1)(A). The physicians' work restriction did not address Migliorini's "skills and abilities"; rather, the physicians limited Migliorini's work environment. Thus, the statement is not dispositive of the issue of total disability.

We now turn to the miner's contention that Dr. Kim's report supports his entitlement to benefits. The ALJ stated that he did not grant Dr. Kim's opinion "much probative value" because the physician offered "no explanation how he arrived at his finding of limitations of walking 2 blocks on level and one flight of stairs." [13] Migliorini argues that the physician did not have to provide his reasoning and that such reasoning is part and parcel of a physician's expertise.

The ALJ's dismissal of Dr. Kim's report on remand was unnecessarily laconic. However, we cannot say that the ALJ rejected outright Dr. Kim's report as undocumented or unreasoned. The ALJ, as trier of fact, could rationally give greater weight to the report of Drs. Sturm and Conibear, which was based on not only a physical examination, symptoms, and patient history, but on an x-ray, a pulmonary function study, and blood gas readings. *Meyer*, at 908–09; *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir.1988) (medical witness credibility is a question for the trier of fact, who need not accept a doctor's conclusions, but can "weigh the medical evidence and draw his own inferences") (quoting *Peabody Coal Co. v. Director, OWCP*, 560 F.2d 797, 802 (7th Cir. 1977)). Dr. Kim based his opinion only on a physical examination, symptoms and work history. Thus, while it is a documented opinion, it is not as well supported, and therefore as reasoned, as Drs. Sturm and Conibear's report.[14]

In sum, the ALJ, as trier of fact, reasonably relied on the report of Drs. Sturm and Conibear, which he interpreted as failing to establish definitely that Migliorini was totally disabled due to pneumoconiosis. His decision to deny black lung benefits was rational, supported by substantial evidence, and not contrary to law.

### Conclusion

Given the deference afforded the factfinder, and a claimant's burdens of proof and persuasion on the interim presumption, we must affirm the decision of the Board.

AFFIRMED.

---

**13.** The Board had ordered the ALJ to credit or discredit the report and then compare it with the report of Drs. Sturm and Conibear on remand.

**14.** The Board has previously held that the physical restrictions placed on the miner by Dr. Kim both can, and cannot, support an ALJ's decision to invoke the interim presumption pursuant to 20 C.F.R. § 727.203(a)(4). *Compare Parino v. Old Ben Coal Co.*, 6 BLR 1–104, 1–107 (Ben.Rev. Bd.1983), *with Bray v. Director, OWCP*, 6 BLR 1–400, 1–402 (Ben.Rev.Bd.1983) (citing *Peabody Coal Co. v. Director, OWCP*, 581 F.2d 121 (7th Cir.1978)).