**FREEMAN UNITED COAL MINING COMPANY, Petitioner,**

v.

**Sally COOPER, Widow of Jack Cooper, Benefits Review Board, United States Department of Labor, Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 91–1215.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1991.

Decided June 11, 1992.

 

 
 

 
 

Jay D. Stein, Karin T. O'Connell (argued), Gould & Ratner, Chicago, Ill., for Freeman United Coal Mining Co.

Wayne Reynolds, Reynolds & Wissore, Belleville, Ill., for Sally Cooper.

Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.

Donald S. Shire, Sol. Gen., Richard A. Seid, Dept. of Labor, Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., for Department of Labor.

Donald S. Shire, Sol. Gen., Michael J. Denney, Elizabeth Shapiro, Richard A. Seid, Edward Waldman (argued), Dept. of Labor, Washington, D.C., for Office of Workers' Compensation Program.

Before MANION and KANNE, Circuit Judges, and WILL, Senior District Judge.*

KANNE, Circuit Judge.

The Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901, *et seq.*, allows miners suffering from coal workers' pneumoconiosis, or black lung disease, to receive benefits. In some cases their surviving spouses may also receive benefits. In this case, Freeman United Coal Mining Company ("Freeman Coal") asks us to review a decision by the Benefits Review Board of the United States Department of Labor ("BRB") granting black lung benefits to Sally Cooper, the surviving widow of John A. Cooper, who was employed as a miner with Freeman Coal for fifteen years. The BRB granted two claims for benefits: the living miner claim originally filed by Mr. Cooper and Mrs. Cooper's surviving widow's claim. We are asked to review both awards.

Mr. Cooper filed a claim for benefits (living miner claim) on October 1, 1984. The Department of Labor ("DOL") administratively denied his claim on January 10, 1985. In August 1985, after approximately one year of treatment, Mr. Cooper died of oat cell cancer of the lung. Mrs. Cooper then filed a survivor's claim on September 16, 1985, which was also administratively denied by the DOL. At her request, both claims were transferred to the Office of Administrative Law Judges for a hearing.

On April 5, 1988, Mrs. Cooper requested that the Administrative Law Judge ("ALJ") render a decision upon the record. Free-

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

man Coal consented to her request, but also requested that the ALJ allow Freeman Coal 30 days to file a legal memorandum in support of its position. On June 20, 1988, before Freeman Coal filed its legal memorandum, the ALJ issued a decision and order awarding benefits on both the living miner claim and the surviving widow's claim.

In his decision awarding black lung benefits, the ALJ found that Mr. Cooper was totally disabled by pneumoconiosis arising out of coal mine employment and was entitled to prevail on the living miner claim. The ALJ also found that pneumoconiosis was a substantial contributing cause or factor leading to Mr. Cooper's death. Accordingly, the ALJ granted Mrs. Cooper's application for survivor's benefits.

Freeman Coal filed a motion for reconsideration, which objected to the ALJ's issuance of a decision without having afforded Freeman Coal an opportunity to submit its legal memorandum. Freeman Coal attached its memorandum to the motion for reconsideration. The ALJ issued an order denying the motion for reconsideration, but noted in the order that he had carefully considered the legal memorandum. Freeman Coal appealed the ALJ's decision to the BRB, which affirmed the award of benefits. Freeman Coal then petitioned this court for review of the BRB's decision.

■ We must affirm the BRB's decision, although we actually review the ALJ's decision to determine if it is rational, in accord with law, and supported by substantial evidence. *See Freeman United Coal Mining Co. v. Stone,* 957 F.2d 360, 362 (7th Cir. 1992); *Peabody Coal Co. v. Helms,* 859 F.2d 486, 489 (7th Cir.1988). Substantial evidence " 'is such relevant evidence as a rational mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). As we noted in *Stone,* "[s]ubstantial evidence may be less than a preponderance of the evidence, ... and 'a reviewing body may not set aside an inference merely

because it finds the opposite conclusion more reasonable or because it questions the factual basis.' " *Stone* at 362 (quoting *Smith v. Director, OWCP,* 843 F.2d 1053, 1057 (7th Cir.1988)).

Freeman Coal first argues that the ALJ denied it due process by failing to wait to decide the case until Freeman Coal filed its legal memorandum. It claims that once the ALJ became aware that he had issued a decision without considering Freeman Coal's memorandum, he was obligated to vacate his decision. As we shall explain, we do not agree with this argument.

■ Freeman Coal's April 11, 1988 letter to the ALJ makes clear that it consented to have the case decided by the ALJ without a hearing. The final sentence of that letter reads: "[h]owever, we would request that your order allow us 30 days to file a short legal memorandum in support of our position." In that sentence, Freeman Coal merely requested the ALJ to consider the memorandum and did not expressly condition Freeman Coal's consent upon its right to file a legal memorandum.

Two federal regulations are relevant to this issue. The Rules of Practice and Procedure for Administrative Hearing Before the Office of Administrative Law Judges provide, in part, that:

> "[t]he administrative law judge may hear arguments of counsel and may limit the time of such arguments at his or her discretion, and *may allow briefs to be filed on behalf of either party* but shall closely limit the time within which the briefs for both parties shall be filed, so as to avoid unreasonable delay."

29 CFR § 18.53 (1991) (emphasis added). Section 725 of the Code of Federal Regulations which govern Claims for Benefits under Part C of Title IV of the Federal Mine Safety and Health Act contains a similar provision. It provides that: "[b]riefs or other written statements or allegations as to facts or law may be filed by any party with the permission of the administrative law judge." 20 CFR § 725.459A (1991). These regulations demonstrate that the ALJ had discretion to accept legal memoranda, and was not required to accept Free-

man Coal's memorandum. Freeman Coal does not argue that the regulations themselves violate its due process rights. Therefore, we hold that there was no due process violation.

█ Even if the ALJ was required to have considered Freeman Coal's legal memorandum before deciding the case, Freeman Coal's due process rights were not violated because the ALJ considered the memorandum when denying Freeman Coal's motion for reconsideration. In the order denying the motion for reconsideration the ALJ stated: "[h]aving carefully considered [Freeman Coal's] statement of facts and law, I am unable to conclude that it provides a basis for denying the claim in this matter." Thus, any error by the ALJ was harmless.

Second, Freeman Coal argues that the record does not contain substantial evidence to support the ALJ's decision to award benefits on Mr. Cooper's living miner claim.[1] In awarding benefits, the ALJ credited Mr. Cooper with fifteen years of coal mine employment and found that under § 718.204(c)(1) Mr. Cooper had established that he was totally disabled. The ALJ then found the existence of pneumoconiosis under 20 C.F.R. § 718.202(a)(4), and that the pneumoconiosis presumptively arose from coal mine employment. *See* 20 C.F.R. § 718.203(b). The BRB affirmed the ALJ's findings.

█ Freeman Coal challenges only the ALJ's finding that Mr. Cooper suffered from pneumoconiosis. *See* 20 C.F.R. § 718.202(a)(4).[2] According to § 718.-202(a)(1), a chest x-ray may form a basis for a finding of pneumoconiosis. Nevertheless, it is clear that the chest x-rays taken of Mr. Cooper were negative for the existence of pneumoconiosis. Under § 718.202(a)(4), the existence of pneumoco-

niosis may still be established by submitting the opinion of a physician.[3] That section provides:

[a] determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative x-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

20 C.F.R. § 718.202(a)(4).

Freeman Coal argues that the record contains no evidence that Mr. Cooper suffered from pneumoconiosis. The Director of the Office of Workers' Compensation Programs, of the DOL ("the Director"), and Mrs. Cooper respond that the record evidence meets the test set forth in this section. To determine if the record contains substantial evidence to support the award, we shall review the medical records and testimony concerning Mr. Cooper's lung ailments.

█ The ALJ relied on three medical reports in the record to support a finding that Mr. Cooper suffered from "legal pneumoconiosis." Dr. Vest, one of Mr. Cooper's treating physicians, concluded that there was some evidence that Mr. Cooper had occupational bronchitis causally related to his coal mine employment. Dr. Vest had conducted a physical examination of Mr. Cooper, and obtained pulmonary function studies, arterial blood gas studies, and other radiographic studies. Freeman Coal argues that Dr. Vest's opinion does not help Mr. Cooper's cause because it is not sup-

---

1. Because both the living miner's and survivor's claims were filed after March 31, 1980, they must be adjudicated under the criteria set forth in 20 C.F.R. Part 718. *See* 20 C.F.R. § 718.2.

2. The parties agree that the presumptions established by §§ 718.304, 718.305 and 718.306 are inapplicable to this case. *See* 20 C.F.R. § 718.-202(a)(3).

3. This type of pneumoconiosis is also called "legal pneumoconiosis." We have noted that "legal pneumoconiosis" is a chronic respiratory or pulmonary disease arising out of coal mine employment. *See Peabody Coal v. Lowis,* 708 F.2d 266, 268 n. 4 (7th Cir.1983).

ported by objective medical evidence and because Dr. Vest stated that it was impossible to determine whether Mr. Cooper's coal mine employment contributed to his death from oat cell cancer of the lung. Dr. Vest's finding that Mr. Cooper had some evidence of occupational bronchitis falls within the definition of "legal pneumoconiosis." Moreover, in forming that opinion, Dr. Vest relied on medical records from Mr. Cooper's September 1984 hospitalization, which included pulmonary function and blood gas studies. Dr. Vest's opinion was clearly supported by objective medical evidence.

Dr. Singh, who also examined Mr. Cooper, concluded that he suffered from chronic lung disease which was causally related to dust exposure from his coal mine employment. Dr. Singh conducted a physical examination, and also reviewed pulmonary function studies, arterial blood gas studies, and a chest x-ray. Freeman Coal argues that the ALJ erroneously relied on Dr. Singh's opinion because it was not reasoned. In fact, after examining Mr. Cooper, Dr. Singh merely checked a box on a DOL form which indicated that Mr. Cooper's diagnosed respiratory conditions were related to dust exposure in coal mine employment. Dr. Singh left blank the portion of the form requesting a rationale for his opinion.

In the past, we have noted our concern with reviewing medical reports where doctors have merely completed reports without providing an explanation where the form requests one. *See Poole v. Freeman United Coal Min. Co.*, 897 F.2d 888, 894 (7th Cir.1990). To say the least, it is difficult for us to determine from such a form whether the doctor actually gave a *reasoned* medical opinion. Nevertheless, we held in *Poole* that such a report is minimally sufficient to support a claim for benefits. *Id.* Thus, Dr. Singh's opinion supports Mrs. Cooper's claim for benefits. Our conclusion is strengthened by the fact that Dr. Singh's opinion is consistent with that of Dr. Vest, which was well-reasoned.

Freeman Coal also argues that the ALJ could not have reasonably relied on the opinion of Dr. Martin, one of Mr. Cooper's treating physicians. In a letter to Mr. Cooper's representative, Dr. Martin stated only that:

Mr. Cooper definitely had chronic bronchitis and black lung disease. He was short of breath because of his lung disease to the very end. Certainly his black lung disease and resultant respiratory insufficiency was a contributing factor in his death.

Previously, on Mr. Cooper's death certificate, Dr. Martin listed the cause of death as oat cell cancer of the lung. Freeman Coal claims that his opinion was not reasoned because Dr. Martin did not support his opinion with any factual basis, and certainly did not mention the results of any clinical testing.

The BRB found that it was harmless error for the ALJ to rely on Dr. Martin's opinion because the opinions of Drs. Vest and Singh constitute substantial evidence in support of the ALJ's decision. The Director agrees that any error by the ALJ in considering Dr. Martin's opinion was harmless. Mrs. Cooper claims that the ALJ was entitled to rely on Dr. Martin's opinion because he was Mr. Cooper's personal physician.

 It is well settled that the ALJ "decides, in the first instance, whether a medical opinion is sufficiently reasoned." *Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 363 (7th Cir.1985). Although the ALJ is entitled to make that determination, we have held that a physician's opinion "must still be based on a 'reasoned medical judgment.'" *Arch Mineral Corp. v. Director, OWCP*, 798 F.2d 215, 222 (7th Cir. 1986). In *Migliorini v. Director, OWCP*, 898 F.2d 1292 (7th Cir.1990), in reviewing an opinion under § 727.203(a), we said that "[a] reasoned medical opinion rests on documentation adequate to support a physician's conclusions." *Id.* at 1295. To reverse the ALJ's determination, we must find that the opinion departs from the information available so as to "offend reason." *Peabody Coal*, 778 F.2d at 363. Nevertheless, a conclusory assertion does not qualify as a reasoned medical judgment

under § 718.202(a)(4). Thus, we must determine whether Dr. Martin's opinion qualifies as a "reasoned medical judgment." *Id.*

■ Dr. Martin's opinion is, at best, a mere assertion. As we noted above, Dr. Martin did not indicate whether he relied on any clinical tests in forming his opinion. *See* 20 C.F.R. § 718.202(a)(4). We can only be certain that Dr. Martin performed a physical examination of Mr. Cooper at some time prior to rendering his opinion, and that Dr. Martin was aware that Mr. Cooper was a miner. Dr. Martin did not review any of the evidence in the record, including the opinions of Drs. Singh and Vest, when he made his findings. In sum, Dr. Martin certainly concluded that Mr. Cooper had pneumoconiosis but he does not explain how he made that determination. Thus, we hold that Dr. Martin's statement was not a reasoned medical opinion under § 718.202(a)(4) because it contains insufficient reasoning to support its findings. In so holding, we make clear that we do not hold that a medical opinion must be supported by clinical tests. *See* 20 C.F.R. § 718.202(a)(4).

■ Our holding, however, does not require reversal of the living miner award. When viewed together, the opinions of Dr. Vest and Dr. Singh constitute substantial evidence to support the ALJ's conclusion that Mr. Cooper suffered from pneumoconiosis. Thus, we agree with the BRB that the ALJ's error in considering Dr. Martin's opinion was harmless.

Freeman Coal also challenges the award of survivor's benefits. Section 718.205(a) states that: "[b]enefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis." However, part (4) of that section provides that: "survivors are not eligible for benefits where the miner's death was caused by a traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death."

**4.** The Director takes no position on whether there was substantial evidence to support the

The ALJ found that the primary cause of Mr. Cooper's death was oat cell cancer of the lung. The ALJ then reviewed the opinions of Drs. Vest and Martin, the only physicians to address the survivor's benefits. Dr. Vest found that Mr. Cooper "had some evidence of occupational bronchitis secondary to his job." He went on to note that: "[i]t is also my feeling that his smoking contributed largely to his lung cancer and that it is virtually impossible to determine whether his coal work and his mine employment also contributed to his demise." Dr. Martin disagreed, stating only that "[c]ertainly [Mr. Cooper's] black lung disease and resultant respiratory insufficiency was a contributing factor in his death." The ALJ found that the inconsistent opinions of Drs. Vest and Martin "raise a question of true doubt ... which I have resolved in claimant's favor."

Freeman Coal argues that the ALJ's finding that pneumoconiosis was a substantial contributing cause of Mr. Cooper's death was not based upon substantial evidence, *see* 20 C.F.R. § 718.205(c), and that Mr. Cooper's lung cancer was almost certainly caused by smoking.[4] In fact, the record reflects that throughout most of his adult life, Mr. Cooper smoked cigarettes at the rate of at least one pack per day. In response, Mrs. Cooper relies solely on Dr. Martin's opinion.

■ In discussing the cause of Mr. Cooper's death, Dr. Martin baldly asserted that black lung disease contributed to Mr. Cooper's death. Dr. Martin had, however, personally treated Mr. Cooper and was aware of the circumstances surrounding his death. As we noted above, it was error for the ALJ to consider Dr. Martin's opinion with respect to the living miner claim because it was not a reasoned medical opinion. If Dr. Martin's opinion did not provide a reasonable basis to conclude that Mr. Cooper suffered from pneumoconiosis, it could not have provided a reasonable basis

survivor's claim.

upon which to conclude that pneumoconiosis substantially contributed to his death.

Moreover, even if we were to find Dr. Martin's opinion sufficient to support a finding that Mr. Cooper suffered from pneumoconiosis, we cannot agree that it is sufficient to support a finding that pneumoconiosis contributed to his death. Dr. Martin does not reveal how he determined that pneumoconiosis contributed to Mr. Cooper's death. Did he rely upon a physical examination? A scientific test? An X-Ray? Intuition? In our view, Dr. Martin's "opinion" does not qualify as a reasoned medical judgement. *Arch Mineral*, 798 F.2d at 222. The ALJ certainly erred in considering the portion of Dr. Martin's opinion which found that pneumoconiosis contributed to Mr. Cooper's death. *See Brazzalle v. Director, OWCP*, 803 F.2d 934, 936 (8th Cir.1986) (holding that to be considered a reasoned medical judgement a doctor's opinion must adequately explain the basis for its conclusion). In *Risher v. OWCP*, 940 F.2d 327, 331 (8th Cir.1991), the court considered a doctor's opinion remarkably similar to Dr. Martin's opinion. The doctor stated that: "[t]he patient has probably had black lung disease ..." The court found that opinion was not a reasoned medical judgment because the doctor did not explain the bases for his conclusion. *Id.* Therefore, the record simply contains no reliable evidence upon which to base a finding that Mr. Cooper's pneumoconiosis substantially contributed to his death.

The doctrine of "true doubt" cannot save Mrs. Cooper's claim either, because " 'true doubt' arises only when equally probative but contradictory medical evidence is presented in the record...." *Kozele v. Rochester and Pittsburgh Coal Co.*, 6 BLR 1–378, 1–384 (1983). The record does not contain equally probative but contradictory evidence on whether Mr. Cooper's pneumoconiosis substantially contributed to his death—it contains no evidence. *See also* 20 C.F.R. § 718.205(d) ("the initial burden is upon the claimant ... to develop evidence which meets the requirements of paragraph (c) of this section"). The ALJ erred in awarding survivor's benefits to Mrs. Cooper.

Therefore, we DENY Freeman Coal's petition for review of the decision of the BRB with respect to the living miner claim. We GRANT the petition to review the BRB's decision to award survivor's benefits to Mrs. Cooper, and we REVERSE the award of benefits.

WILL, Senior District Judge, concurring in part, dissenting in part:

I agree with the majority that the opinions of both Dr. Vest and Dr. Singh support the finding that Mr. Cooper had black lung disease and the award of living miner's benefits. However, in light of the record and the prior decisions of this and other courts, I disagree with the majority's rejection of Dr. Martin's opinion that black lung disease was a contributing cause of Mr. Cooper's death, and with its determination that widow's benefits must be denied.

The issue, as the majority recognizes, is whether Dr. Martin's opinion is a "reasoned medical opinion." The majority finds that Dr. Martin did not give reasons to support his opinion, and that it was not based on clinical tests, so that it is therefore a "mere assertion," without any evidence to support it. We defined "reasoned medical opinion" in *Migliorini v. Director, OWCP*, 898 F.2d 1292 (7th Cir.1990). As recognized by the majority, "[a] reasoned medical opinion rests on documentation adequate to support the physician's conclusions." *Id.* at 1295. The majority, however, overlooks the more specific holding of *Migliorini*, that, "a medical opinion may be adequately documented with *only a physical examination and a claimant's symptoms and work history.*" *Id.* (emphasis added). That is exactly what we have here. Further, as noted by the majority, "whether an opinion is reasoned is the ALJ's decision." *Id.* at 1296. *See also, Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 363 (7th Cir.1985). Unless the doctor's opinion departs from the information available so as to "offend reason," we may not question the ALJ's decision. *Id.*

Dr. Martin was Mr. Cooper's regular personal physician who saw him through his

illness and death. He conducted one or more physical examinations, and he knew Mr. Cooper's symptoms and work history. Based on that information, he concluded that:

> Mr. Cooper definitely had chronic bronchitis and black lung disease. He was short of breath because of his lung disease to the very end. Certainly his black lung disease and resultant respiratory insufficiency was a contributing factor in his death.

That conclusion is consistent with the medical opinions of the other two doctors who diagnosed black lung disease based on some clinical tests and on Cooper's 1984 hospitalization, with which Dr. Martin was also obviously familiar.

The majority criticizes Dr. Martin's opinion, calling it a mere assertion, because, it says, he did not give reasons for his diagnosis, and because he did not state that he had examined any clinical test results in arriving at that diagnosis. (op. 448) However, the majority finds, as it must given this court's precedents, that the opinion of Dr. Singh, who merely checked a box, was reasoned. (op. 448) The majority neglects to explain how checking a box without an explanation can be sufficiently reasoned, while writing down a diagnosis based on observations over an extended period of time is not.

The majority professes that it is not requiring that a medical opinion be supported by clinical tests in order to be reasoned. (op. 449) Yet, the only differences between the opinions of Dr. Martin and Dr. Singh are that Dr. Martin's is based on physical examinations and an extended knowledge of the patient's symptoms, history, and employment, while Dr. Singh's is based on clinical tests. Requiring clinical tests is clearly inconsistent with both the relevant regulations (*see* 20 C.F.R. § 718.202(a)(4)) and the precedents of this court (*see Migliorini, supra*).

Dr. Martin's opinion is no more a "mere assertion" than are any doctor's diagnoses and conclusions based on his examinations of a patient, the history of the patient's complaints, his treatment of the patient over a period of time, including hospitalizations, and the symptoms which he finds the patient had. Dr. Martin, as previously quoted, described Cooper's condition and symptoms and concluded, based on his examinations and Cooper's symptoms and work history, that he "certainly" had black lung disease which contributed to his death.

The ALJ found Dr. Martin's opinion reasoned and adequate, and the Benefits Review Board affirmed. Dr. Martin, having observed and treated him over a considerable period, was probably the best informed of all three doctors as to Cooper's condition and his opinion is not only a medical opinion, but a "reasoned medical opinion" under the decisions of this and other courts. *Migliorini, supra, see also, Ware v. Director, OWCP*, 814 F.2d 514, 516 (8th Cir. 1987) (reversing denial of benefits, the court held that a medical opinion was reasoned where it relied on employment history, medical history, and symptoms). Nothing more is, or should be, required.

If we were weighing the evidence *de novo*, we might give more weight to the opinion of a doctor who performed more clinical tests, and we might wish that here Dr. Martin had been more expansive and detailed in explaining the basis of his diagnosis. However, that is not our function or prerogative. We do not review the evidence *de novo*. Our review is limited, as stated in the majority opinion, to whether the ALJ's opinion is supported by "such relevant evidence as a rational mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and "[s]ubstantial evidence may be less than a preponderance of the evidence …" *Freeman United Coal Mining Co. v. Stone*, 957 F.2d 360, 362 (7th Cir.1992). As long as Dr. Martin's opinion qualifies as a "reasoned medical opinion," which it clearly does, the ALJ was entitled, if not obligated, to resolve doubts in favor of the claimant. *See, Amax Coal Co. v. Anderson*, 771 F.2d 1011, 1015 (7th Cir. 1985), and S.Rep. No. 92–743, reprinted in 1972 U.S.C.C.A.N. 2305, 2315 ("In the ab-

sence of definitive medical conclusions, there is a clear need to resolve doubts in favor of the disabled miner or his survivors.")

Given the standard of review, a "rational mind" obviously could find Dr. Martin's opinion to be "adequate evidence." It is based on his observations of Mr. Cooper over an extended period of time and is consistent with the opinions of two other doctors who did perform clinical tests. The fact that the opposite conclusion may seem more reasonable to the majority, a conclusion which, given the precedents of this and other courts, is arguable at best, is not enough to justify reversal. Therefore, I dissent from reversing the ALJ's award, and the Benefits Review Board's affirmance, of widow's benefits to Mrs. Cooper.