In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1243

MICHAEL DALTON, *et al.*,

*Petitioners-Appellants*,

*v.*

OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and FRONTIER-KEMPER CONSTRUCTORS, INC.,

*Respondents-Appellees*.

On Petition for Review of the Decision and Order of the
Benefits Review Board, United States Department of Labor.
BRB Nos. 11-0852 BLA and 12-0168 BLA

ARGUED SEPTEMBER 12, 2013 — DECIDED DECEMBER 20, 2013

Before WOOD, *Chief Judge*, and MANION and TINDER, *Circuit Judges*.

WOOD, *Chief Judge*. For almost 15 years William Dalton and, after his death eight years into the proceedings, his survivors have been seeking benefits under the Black Lung Benefits Act (the Act), 30 U.S.C. §§ 901-45. They may have thought that their quest was almost over when, in August

2011, an Administrative Law Judge (ALJ) ruled in favor of Mr. Dalton's children in all respects. But they would have been wrong. On appeal to the Department of Labor's Benefits Review Board (the Board), the children (petitioners Michael Dalton, Sandi Collins, Kathy Moudy, and Joyce Gillihan, referred to here as "the Children") won some points but lost on the critical issue of the onset date of their father's disease—and thus the date on which their benefits would commence.

The employer, respondent Frontier-Kemper Constructors, Inc. (Frontier), has not filed a petition for review of the Board's decision, but the Children have. They challenge only the Board's decision to modify, in a way unfavorable to them, the date on which the benefits began. In a back-door way, Frontier attacks the Board's decision to permit the Children to be substituted for Mr. Dalton as parties; it argues that they lack standing because (it says) they are not real parties in interest under the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 921(c), as incorporated by the Act, 30 U.S.C. § 932(a). We find no merit to Frontier's position. On the central question of onset date, we conclude that substantial evidence supported the ALJ's finding that August 1991 marked the time of onset for Mr. Dalton's total disability on account of pneumoconiosis. We therefore grant the Children's petition for review and remand this case to the Board for reinstatement of the award of benefits using August 1991 as the date by which the claimant's total disability began, and thus the date for the commencement of benefits.

## I

Mr. Dalton worked in coal mine construction jobs for at least 22 years, from 1957 to August 1991. He worked on both

conventional and "raise-bored" shafts, both of which involve cutting through rock and coal. Through affidavits, Mr. Dalton confirmed that he was exposed to substantial amounts of coal and rock dust throughout his employment. The last 16 years of his employment were at Frontier. His work was arduous and over time he developed trouble breathing. In August 1991 he quit his job because of his difficulty breathing, and he was never employed again.

Mr. Dalton filed a claim for benefits under the Act on June 1, 1999. Frontier opposed the claim and the District Director of the Office of Workers' Compensation proposed a denial in February 2000. Upon Mr. Dalton's request, the case was transferred to the Office of the Administrative Law Judges and submitted on the record without a hearing. On October 14, 2003, an ALJ awarded benefits, finding that Mr. Dalton was a "miner" for statutory purposes and that Frontier was the "responsible operator." After weighing the medical evidence, the ALJ found that Mr. Dalton had established clinical pneumoconiosis, based on the opinions of two pulmonary experts, Drs. Cohen and Dias. The ALJ rejected the contradictory opinion of Frontier's expert, Dr. Selby, as "unreasoned." The one problem, from Mr. Dalton's standpoint, was that the ALJ ruled that he could not determine the date of onset of total disability on account of pneumoconiosis. That meant, pursuant to 20 C.F.R. § 725.503(b), that Mr. Dalton's benefits began in June 1999, the month and year in which he filed his claim.

Frontier appealed. Although the Board accepted the ALJ's evaluations of the three experts, it vacated the ALJ's finding that Mr. Dalton had established clinical pneumoconiosis, finding that the ALJ had not properly evaluated the x-rays

and CT scans in the record. On remand, in an opinion issued on April 3, 2006, the ALJ again awarded benefits beginning in June 1999. Frontier again appealed. On April 27, 2007, the Board affirmed the ALJ's findings in part but vacated his finding that Mr. Dalton had established total disability on account of "legal pneumoconiosis." The case was once again remanded.

By this time, the original ALJ had retired, and so the case was reassigned to a new ALJ, who awarded benefits on August 29, 2008. The new ALJ reweighed the evidence and found that Mr. Dalton had established both clinical and legal pneumoconiosis and that his total respiratory disability was the result of his "legal" pneumoconiosis—in other words, his chronic obstructive pulmonary disease (COPD) was caused in part by his exposure to coal-mine dust. Like the earlier ALJ, the new ALJ credited Mr. Dalton's experts and discredited the contrary opinions of Dr. Selby for Frontier and Dr. Carandang for the Department of Labor. He ordered benefits to begin on June 1, 1999.

Mr. Dalton, unfortunately, did not live to see the outcome of his case: he died on March 27, 2007. At that point the Children moved to substitute as claimants, but the ALJ denied their motion in the August 29, 2008, ruling. Frontier appealed the award of benefits to the Board, and the Children cross-appealed the denial of the motion to substitute. While its administrative appeal was pending, Frontier moved to remand the case to the District Director and a bit later to dismiss its appeal. The Board obliged, dismissing both the appeal and the cross-appeal on February 26, 2009.

The Children then filed a renewed motion to substitute on March 20, 2009, and both Frontier and the Children sub-

mitted additional evidence. The District Director did not rule on the motion to substitute, but on August 4, 2009, he found that the ALJ had made no mistake in awarding benefits and denied any modification. Frontier again objected and asked that the case be forwarded to an ALJ.

At that point, the case was assigned to its third ALJ, Judge Craft. On March 31, 2010, the Children once again moved to substitute. Judge Craft granted the motion in an order dated June 23, 2010. Frontier fired off an interlocutory appeal to the Board, but the Children promptly moved to dismiss. The Board agreed that the appeal was premature.

The case then proceeded before Judge Craft. Since it was Frontier that had filed for modification, it had the burden of establishing a mistake in the earlier determinations of fact. Judge Craft found that Frontier failed to meet this burden with respect to the decision to award benefits. But she did not stop there. *Sua sponte*, she found that the prior ALJs had been mistaken when they found no evidence for an onset date earlier than Mr. Dalton's date of filing. She explained that while the filing date is used as the onset date of total disability on account of pneumoconiosis when the true onset date cannot be determined, the medical evidence in Mr. Dalton's case adequately established an earlier date of total disability: June 1991, when pulmonary function tests demonstrated total respiratory disability for purposes of the relevant regulations. Noting that Mr. Dalton stopped working in August 1991, and citing Mr. Dalton's medical reports, Judge Craft found that there was no time after August 1991 that Mr. Dalton was not totally disabled. She thus modified the date for commencement of benefits from June 1999 back to August 1991. Judge Craft also awarded attorneys' fees and

expenses to Petitioners' counsel. Frontier appealed both awards to the Board.

On December 7, 2012, the Board affirmed Judge Craft's decision to substitute the Children as parties to the claim. It also affirmed her denial of Frontier's request for modification of the award, insofar as it established eligibility for benefits in general. The Board rejected the argument that Judge Craft abused her discretion when she *sua sponte* took up the question of modification of the date for commencement of benefits. But it vacated Judge Craft's finding that the onset date was August 1991. Under the regulations, benefits are payable as of the month of onset of total disability on account of pneumoconiosis or, if the evidence does not establish the month of onset, as of the month during which the claim was filed, unless medical evidence that was credited by the ALJ establishes that the miner was not totally disabled from pneumoconiosis at any later time. The Board wrote that because "neither Dr. Beck nor Dr. Cohen opined that the miner was disabled *due to pneumoconiosis* in 1991" it had to vacate the ALJ's designation of August 1991 as the date for the commencement of benefits. The Board thought that there was no medical evidence that reflected the date upon which Mr. Dalton became totally disabled on account of pneumoconiosis, and thus that his benefits were limited to the period beginning with the month in which he filed his original claim. As a result, the Board changed the commencement of benefits back from August 1991 to June 1999, the month and year in which Mr. Dalton filed his claim. The Board affirmed Judge Craft's award of attorneys' fees.

On February 4, 2013, the Children filed a petition for re-
view of the Board's vacation of Judge Craft's finding that
benefits should commence as of August 1991. Frontier did
not file a cross-petition.

## II

Before addressing the merits of the petition for review,
we must consider Frontier's contention that this court lacks
jurisdiction because the Children are not real parties in in-
terest. For a number of reasons, including the fact that the
concept of a real party in interest is not identical to that of
constitutional standing, see 6A CHARLES ALAN WRIGHT,
ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE
AND PROCEDURE § 1542, (3d ed. 2010), we find no merit in
this argument.

Under the applicable regulations, children of a claimant
who make a showing that their "rights with respect to bene-
fits may be prejudiced by a decision of an adjudication of-
ficer, may be made a party." 20 C.F.R. § 725.360(b). Frontier
itself requested a modification of the ALJ's finding of bene-
fits for Mr. Dalton, and an order issued in response to such a
request "may terminate, continue, reinstate, increase or de-
crease benefit payments or award benefits." 20 C.F.R.
§725.310(d). Accordingly, even if Mr. Dalton had received all
payments to which he was entitled, save for a 20% penalty to
which his estate is still entitled (not at issue here), Frontier's
request for modification made it necessary for the Children
to defend the award Mr. Dalton already had received. As of
then, there was a risk that the resulting modification could
result in a reversal of the existing award. See *Old Ben Coal Co.
v. Director, Office of Workers' Comp. Programs*, 292 F.3d 533, 538
n.4 (7th Cir. 2002); *Youghiogheny & Ohio Oil Co. v. Webb*, 49

F.3d 244, 248–49 (6th Cir. 1995) (a miner's right to benefits does not cease upon death; the benefits must be paid to eligible surviving relatives). The Children were and are entitled to benefits as Mr. Dalton's surviving relatives. At the time the ALJ modified the date of onset of total disability to August 1991, the Children's petition to substitute had been granted and they were entitled to almost eight years of unpaid benefits. The Children have a concrete, financial interest in the outcome of this case, and it is fully redressable by the court. Their constitutional standing to sue is unquestionable.

There is similarly no other problem with the Children's right to pursue this petition. "Any person adversely affected or aggrieved by a final order of the Benefits Review Board may obtain a review of that order in the U.S. court of appeals for the circuit in which the injury occurred … ." 20 C.F.R. § 725.482. They are proper parties with a recognized interest in the award. When the Board altered the date of commencement from August 1991 to June 1999, thereby erasing the right to eight years' worth of benefits, that decision had an adverse impact on the Children. Enough said; we may now address the merits.

### III

While this petition for review is from a decision of the Board, in reviewing the modification to the date of onset of total disability, we must look back to the judgment of the ALJ. That is because, as the Board acknowledged, the Board's scope of review is defined by statute, and the ALJ's decision must be affirmed if it is rational, supported by substantial evidence, and in accordance with applicable law. See 33 U.S.C. § 921(b)(3); 20 C.F.R. § 802.301; *Migliorini v. Director, Office of Workers' Comp. Programs*, 898 F.2d 1292, 1294 (7th

Cir. 1990). We must ensure that the Board stayed within those boundaries. Although we review the entire record, we too are not entitled to re-determine the facts or substitute our judgment for that of the ALJ. See *Amax Coal Co. v. Beasley*, 957 F.2d 324, 327 (7th Cir. 1992). Judicial review of the Board's decision is limited to whether the Board adhered to its scope of review and whether it committed an error of law. See *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 590 (7th Cir. 1985).

The Children present only one issue for our consideration: whether the Board erred when it vacated the ALJ's finding that Mr. Dalton was totally disabled by pneumoconiosis as of August 1991, and then substituted June 1999 as the date for the commencement of benefits?

The Board's explanation for why it overturned the ALJ's determination is summarized in a single sentence: "As neither Dr. Beck nor Dr. Cohen opined that the miner was disabled *due to pneumoconiosis* in 1991, we must vacate the administrative law judge's designation of August 1991, as the date for the commencement of benefits." *Dalton et al. v. Frontier-Kemper Constructors, Inc.*, BRB Nos. 11-0852 BLA and 12-0168 BLA, at 12 (Dec. 7, 2012). A closer look at the record before the ALJ, however, demonstrates why that statement does not support the Board's decision.

The record contains ample evidence that Mr. Dalton was totally disabled as of the time he quit his job in August 1991. He stopped working because of breathing problems, and his 1991 pulmonary function tests were qualifying under the regulations. The standard for total disability found in 20 C.F.R. § 718.204(b) was met and, indeed, Frontier did not challenge that finding. The only remaining issue is whether

the record contained substantial evidence to support Judge Craft's factual finding that his total disability in August 1991 was attributable to pneumoconiosis, as defined under the Act. Under the regulations, pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a). And, under the regulations, the phrase "'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). Reviewing the evidence in light of this definition, we find solid support for the ALJ's conclusion.

First, the ALJ expressly found that Frontier's experts' contention that Mr. Dalton's lung disease was caused exclusively by smoking (rather than by a combination of smoking and mine dust) was unreasoned. The Board affirmed the ALJ's general acceptance of Mr. Dalton's experts and rejection of Frontier's. Looking to Mr. Dalton's credited medical-expert evidence, one finds considerable support for the inference that Mr. Dalton's total disability as of August 1991 was at least substantially aggravated, if not entirely caused, by pneumoconiosis.

Mr. Dalton's 1991 pulmonary function tests were low enough that they qualified him for total disability, and Mr. Dalton's own signed affidavit contended that he had to quit his job in August 1991 because of his worsening breathing problems. Physician's treating notes report that Mr. Dalton was on oxygen supplements in 1993.

For example, in 1995 Dr. Beck, one of Mr. Dalton's physicians, wrote a note reporting that Mr. Dalton was "completely disabled as far as the breathing is concerned." Dr. Beck's notes from December 1995 said that Mr. Dalton had significant COPD. In January 1996, Dr. Beck opined that Mr. Dalton had black lung disease because he worked in the mines all his life.

In 2002, Mr. Dalton had chest x-rays that were positive for pneumoconiosis. Dr. Carandang diagnosed him with pneumoconiosis resulting from coal dust and COPD tied to cigarettes. He found Mr. Dalton totally disabled.

Dr. Diaz reviewed Mr. Dalton's medical records and provided a report on January 23, 2002. After examining Mr. Dalton's medical history, he opined that occupational dust exposure made a significant contribution to Mr. Dalton's lung disease.

Dr. Cohen also provided a report dated January 23, 2003. After examining Mr. Dalton's medical history, he concluded that Mr. Dalton had coal workers' pneumoconiosis and that his chronic respiratory condition was substantially related to his history of coal-mine employment and smoking.

Under 20 C.F.R. § 718.203(b), a miner who is suffering from pneumoconiosis and was employed for a minimum of ten years in one or more coal mines is entitled to a rebuttable presumption that his pneumoconiosis arose out of his mining employment. Mr. Dalton was a miner for at least 22 years and thus qualifies for the presumption. In discussing the causal relation between Mr. Dalton's pneumoconiosis and his time as a miner, the ALJ found that Frontier failed to rebut this presumption. The causal relation between his

pneumoconiosis and his mining work was buttressed by the opinions of his experts. As for the date of commencement of benefits, the ALJ found that at least two items of evidence supported the August 1991 date: the 1995 opinion of Dr. Beck, who said that as of June 1991 Mr. Dalton was completely disabled as a result of his breathing problems, as his pulmonary functioning tests revealed; and Dr. Cohen's 2003 report.

Even if her conclusion was not inevitable, the ALJ's opinion was rational and supported by substantial evidence. Frontier submitted no evidence indicating that the totally disabling lung disease Mr. Dalton had by 1991 was caused by something different from the disabling lung disease from which he still suffered in 1995 and 1999. The regulations specifically recognize pneumoconiosis "as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c). More to the point for this case, the Department of Labor has concluded that the risk of significant airway obstruction from coal-mine dust is additive with cigarette smoking. This provides further support for the ALJ's finding that the totally disabling breathing difficulties Mr. Dalton faced in 1991 were caused by both smoking and coal-mine dust, given his long exposure to both. That is all the regulations require.

The ALJ's finding of an August 1991 onset date was, to use the statutory language, "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). Such a finding of fact "shall be conclusive." *Id.* There is nothing wrong with circumstantial evidence, and so it is of no moment that Mr. Dalton did not have more direct

evidence to support his case, such as a doctor in August 1991 who spelled out that Mr. Dalton suffered from totally disabling pneumoconiosis and that his condition was totally disabling. *Collins v. Director, Office of Workers' Comp. Programs, U.S. Dept. of Labor,* 932 F.2d 1191, 1192 (7th Cir. 1991), reminds us that this kind of magic bullet is not required. Indeed, such a requirement would be in some tension with both the rebuttable presumption discussed above and the rule that in cases where the onset date is not clearly established, the benefit of the doubt, and back-dated benefits, go to the miner. *Zeigler Coal Co. v. Kelley*, 112 F.3d 839, 844 (7th Cir. 1997).

**********

Substantial evidence supports the ALJ's finding that Mr. Dalton became totally disabled as a result of pneumoconiosis in August 1991. We therefore GRANT the petition for review and return this case to the Board for entry of an order establishing Mr. Dalton's onset date as August 1991.