**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CONSOLIDATION COAL COMPANY,
                    *Petitioner,*

v.

JOSEPH E. ANGELILLI; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
                    *Respondents.*

No. 02-1644

On Petition for Review of an Order
of the Benefits Review Board.
(01-751-BLA)

Submitted: December 10, 2002

Decided: January 9, 2003

Before WILKINS, NIEMEYER, and GREGORY, Circuit Judges.

---

Reversed by unpublished per curiam opinion.

---

**COUNSEL**

William S. Mattingly, JACKSON & KELLY, P.L.L.C., Morgantown, West Virginia, for Petitioner. Richard K. Wehner, WEHNER LAW OFFICES, Kingwood, West Virginia, for Respondents.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Consolidation Coal Company seeks review of the decision and order of the Benefits Review Board affirming the administrative law judge's award of black lung benefits pursuant to 30 U.S.C. §§ 901-945 (2000). Because our review of the record discloses that the ALJ's decision is not supported by substantial evidence, we reverse the award of benefits.

We review decisions of the BRB to determine whether the BRB properly found that the ALJ's decision was supported by substantial evidence and was in accordance with law. *See Doss v. Director, Office of Workers' Compensation Programs*, 53 F.3d 654, 658 (4th Cir. 1995). In making this determination, we conduct an independent review of the record in deciding whether the ALJ's findings are supported by substantial evidence. *See Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is more than a scintilla, but only such evidence that a reasonable mind could accept as adequate to support a conclusion. *See Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997). Subject to the substantial evidence requirement, the ALJ has the sole authority to make credibility determinations and resolve inconsistencies or conflicts in the evidence. *See Grizzle v. Pickands Mather & Co.*, 994 F.2d 1093, 1096 (4th Cir. 1993). An ALJ, however, may rely only on a medical opinion that constitutes a reasoned medical judgment. *See Freeman United Coal Mining Co. v. Cooper*, 965 F.2d 443, 448 (7th Cir. 1992).

To establish that he is entitled to black lung benefits in a case under Part 718, a miner must prove: "(1) he has pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability." *Mil-*

*burn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998). The parties stipulated that Angelilli is totally disabled by a pulmonary impairment, but disagreed on whether Angelilli suffered from pneumoconiosis and on whether his impairment was caused by pneumoconiosis, Angelilli's extensive smoking history, or a combination of these two factors.

A claimant may establish the existence of pneumoconiosis by means of (1) chest x-rays; (2) biopsy or autopsy evidence; (3) invocation of the presumptions at 20 C.F.R. §§ 718.304 - 718.306; or (4) medical opinion evidence. *See* 20 C.F.R. § 718.202(a) (2002). In findings that are not challenged on appeal, the ALJ determined that Angelilli failed to establish the existence of pneumoconiosis by x-ray evidence, that there was no biopsy or autopsy evidence, and that the presumptions of 20 C.F.R. §§ 718.304 - 718.306 were not applicable to Angelilli's claim. Therefore, the only basis upon which Angelilli may establish that he suffers from pneumoconiosis is medical opinion evidence pursuant to 20 C.F.R. § 718.202(a)(4) (2002).

A miner is totally disabled due to pneumoconiosis if the disease

> is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it:
>
> (i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or
>
> (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

20 C.F.R. § 718.204(c)(1) (2002).

Dr. Devabhaktuni examined Angelilli on January 22, 1991, and April 1, 1997. He was deposed on September 3, 1997. In 1991, he documented Angelilli's smoking history of one pack per day from 1943 until 1972. He found Angelilli's lungs clear on examination. He

diagnosed Angelilli as suffering from hypertension and severe chronic obstructive pulmonary disease (COPD), based upon the results of a pulmonary function test and an exercise stress test. He attributed the severe COPD to Angelilli's cigarette smoking and occupational dust exposure, but did not differentiate between the relative contributions of these factors. The severe COPD caused Angelilli to be severely impaired. At his deposition, Dr. Devabhaktuni stated that he had not diagnosed pneumoconiosis in 1991.

In 1997, Dr. Devabhaktuni found that Angelilli's lungs exhibited "left basilar rales and occasional ronchi [sic]." A pulmonary function study again demonstrated a severe obstructive impairment that was not responsive to bronchodilators. Dr. Devabhaktuni diagnosed coronary artery disease and COPD. The COPD resulted from smoking and occupational dust exposure and resulted in a severe pulmonary impairment.

Dr. Renn also examined Angelilli twice. On September 4, 1984, Dr. Renn found Angelilli's lungs clear except for "bibasilar inspiratory crackles that clear completely with coughing." Dr. Renn interpreted an x-ray as negative for pneumoconiosis, but a pulmonary function test revealed a severe obstructive defect that did not improve with bronchodilators. He concluded that Angelilli was totally disabled from returning to his last coal mine employment as a result of a "moderate-severe obstructive ventilatory defect secondary to chronic bronchitis, hypertension, possible angina pectoris and exogenous obesity." These conditions were not caused by pneumoconiosis, but the chronic bronchitis resulted from Angelilli's cigarette smoking history.

Dr. Renn again examined Angelilli on August 18, 1997. He was also desposed. He found Angelilli's lungs clear on examination, and again interpreted a chest x-ray as negative for pneumoconiosis. The pulmonary function test again indicated a severe obstructive impairment that did not significantly improve with bronchodilators. Although Angelilli reported that he had stopped smoking in 1978, the arterial blood gas test revealed a carboxyhemoglobin level that indicated he was currently smoking a quarter to a half pack of cigarettes per day. Dr. Renn also reviewed several medical records and test reports that included Dr. Devabhaktuni's report of examination on April 21, 1997. Dr. Renn concluded that Angelilli did not have pneu-

moconiosis, but suffered from chronic bronchitis, pulmonary emphysema, and carboxyhemoglobinemia. Angelilli had a severe obstructive ventilatory defect that was totally disabling, that was not caused by nor contributed to by coal mine dust exposure. Angelilli's chronic bronchitis and emphysema were caused by his history of cigarette smoking.

Dr. Fino reviewed medical records, issued a written opinion, and was also deposed. Dr. Fino concluded that Angelilli did not have pneumoconiosis, but suffered from an obstructive ventilatory abnormality that involved both the large and small airways. This defect was caused by an asthmatic bronchitis condition that was caused by cigarette smoking and was unrelated to his coal mine employment. Angelilli was totally disabled, but would have been similarly disabled if he had never entered a coal mine.

The ALJ gave greatest weight to the opinion of Dr. Devabhaktuni, and discredited the opinions of Doctors Renn and Fino. In his first decision, the ALJ discredited Dr. Fino's opinion regarding the existence of pneumoconiosis because he did not examine Angelilli, and because Dr. Fino did not opine whether the asthmatic component of Angelilli's respiratory impairment could have been aggravated by coal dust exposure. The ALJ discredited Dr. Renn's opinion regarding the existence of pneumoconiosis because Dr. Renn testified at his deposition that coal dust exposure cannot aggravate chronic obstructive pulmonary disease, an opinion the ALJ found inconsistent with the definition of legal pneumoconiosis. The ALJ discredited the opinions of Doctors Fino and Renn regarding disability causation because these doctors did not diagnose pneumoconiosis.

The ALJ credited Dr. Devabhaktuni's opinion that Angelilli's disabling COPD was contributed to by coal dust exposure as sufficient to establish both the existence of pneumoconiosis and that Angelilli's respiratory disability was contributed to by pneumoconiosis. The ALJ credited Dr. Devabhaktuni's opinion because he had recently examined Angelilli and thoroughly explained his conclusions, he expressed an opinion consistent with the definition of legal pneumoconiosis, and he considered Angelilli's smoking history. On the first appeal, the BRB rejected the ALJ's reasoning and weighing of the medical opinions and remanded for reconsideration.

In his second decision, the ALJ again gave greater weight to the opinion of Dr. Devabhaktuni. The ALJ initially noted that he believed Angelilli's testimony that he had stopped smoking in 1978, which was corroborated by his wife's testimony. This conclusion was then cited to undermine Dr. Renn's opinion because Dr. Renn did not explain how he concluded that Angelilli's respiratory impairment resulted from smoking, rather than coal dust exposure, when exposure to tobacco smoke ceased prior to the cessation of Angelilli's exposure to coal dust. The ALJ also found Dr. Fino's opinion not well reasoned, based upon a statement in Dr. Fino's deposition that indicated that he was making a "dangerous leap" in applying research on working miners to this case involving a retired miner. The ALJ found Dr. Devabhaktuni's opinion well reasoned because, although he cited a smoking history only half that found by the other physicians, he explained that exposure to industrial irritants commonly caused the same respiratory symptoms as tobacco smoking. On the second appeal, the BRB affirmed the ALJ's weighing of the medical opinion evidence, but remanded for reconsideration of the evidence of the existence of pneumoconiosis under *Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000). After the ALJ again awarded benefits, the BRB affirmed and Consolidation Coal appealed.

Our review of the record convinces us that the ALJ erred in his evaluation of the medical opinion evidence. The reports of Dr. Devabhaktuni's examinations of Angelilli were documented on Department of Labor forms. These reports, contrary to the ALJ's initial characterization, do not fully explain Dr. Devabhaktuni's reasoning and conclusions, but rather merely document those conclusions.

Further, we find that Dr. Devabhaktuni's opinions were equivocal and not well reasoned. In his deposition, Dr. Devabhaktuni acknowledged several objective symptoms exhibited by Angelilli that were not consistent with a respiratory impairment caused by coal dust exposure. When Dr. Devabhaktuni was asked how he determined the cause of Angelilli's COPD, the following exchange occurred:

> Q   Okay. The etiologies of those diseases you indicated what on the form?
>
> A   Chronic obstructive pulmonary disease is due to smoking and occupational dust exposure.

Q   How were you able to conclude that it was due to a combination of smoking and occupational dust exposure?

A   Well, because chronic obstructive lung disease or emphysema or chronic bronchitis is thought to be associated with smoking and also dust exposure, whether it be— whatever. Smoke and dust. And since I know that he worked in the mines, then, he has some dust exposure there.

Q   Not every individual who worked in the mines develops a dust induced lung disease, correct?

A   Not necessarily.

Q   How was it you were able to determine that this gentleman's exposure in the mines resulted in some part of his pulmonary disease?

A   He has pulmonary impairment and once you have impairment you look at what are the contributing factors. And the ones I could identify were those two.

Q   Can you tell us which of the two caused more of the impairment or are you able to apportion them in any fashion?

A   Usually obstructive lung disease is more due to smoking and—but some contribution from the dust exposure also.

Later in his deposition, the doctor stated "[m]y impression was this gentleman has severe obstructive lung disease which is usually related to cigarette smoking. But, it could have been contributed to by the dust exposure." During cross-examination by Angelilli's counsel, Dr. Devabhaktuni remained uncertain, stating "my impression was that his chronic obstructive lung disease may have been some of it due to contribution from the dust exposure," and "Mr. Angelilli is disabled. He has severe impairment from a chronic obstructive lung disease which may have been somewhat contributed to by the dust exposure."

We conclude that, rather than merely expressing the uncertainties of medical science, Dr. Devabhaktuni's equivocal statements indicate a lack of definitive reasoning that undermines the probative value of his opinions. *See United States Steel Mining Co. v. Director, Office of Workers' Compensation Programs*, 187 F.3d 384, 389-90 (4th Cir. 1999).

We also conclude that Dr. Devabhaktuni's opinion was not well reasoned. Contrary to the opinions of Doctors Renn and Fino, who explained how the objective testing led them to conclude that Angelilli's impairment resulted solely from his smoking history, Dr. Devabhaktuni admitted an inability or failure to interpret the pulmonary function test results beyond noting that they indicated small airways involvement. Dr. Devabhaktuni did not have the benefit of considering other medical information and reports that were considered by Doctors Renn and Fino, and admitted that he did not conduct testing necessary to more specifically differentiate the cause of Angelilli's impairment. The objective testing, particularly the pulmonary function tests, also undermined Dr. Devabhaktuni's opinion that Angelilli suffered from a coal dust-induced lung disease, as those tests revealed improvement in Angelilli's lung function from 1984 to 1991, a result contrary to the irreversible nature of pneumoconiosis. Finally, we conclude that the ALJ erred in crediting Dr. Devabhaktuni's opinion, and that, even crediting the doctor's opinion, it was insufficient to establish that pneumoconiosis was "a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 718.204(c)(1) (2002). Because we find that the ALJ erred in crediting Dr. Devabhaktuni's opinion, and his was the only medical opinion evidence supporting the award of benefits, we need not address Consolidation's remaining arguments that the ALJ also erred in discrediting the opinions of Doctors Renn and Fino.

Although the ALJ provided lengthy explanations for his conclusions, his reasoning was based upon factual inaccuracies that resulted from an improper evaluation of the medical opinions such that "no 'reasonable mind' could have interpreted and credited the [medical opinions] as the ALJ did." *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 764 (4th Cir. 1999). Moreover, because there remains no evidence upon which to base a finding of entitlement to benefits, we reverse the award of benefits. We dispense with oral argument

because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*REVERSED*